**William WEST, Sr., Appellant,**

v.

**The GREYHOUND CORPORATION,**
Appellee.

**No. 16621.**

United States Court of Appeals
Fifth Circuit.

April 29, 1958.

Ernest D. Jackson, Sr., Jacksonville, Fla., for appellant.

Wayne K. Ramsay, Jacksonville, Fla., Milam, McIlvaine, Carroll & Wattles Jacksonville, Fla., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and BORAH and TUTTLE, Circuit Judges.

BORAH, Circuit Judge.

William West, Sr., brought suit in the state court under the Florida wrongful death statute,[1] to recover damages for the death of his fourteen year old son, Nathaniel, who died instantly as the result of a collision on a public highway between the horse which the decedent was riding and the defendant's bus. Plaintiff also sought damages for the value of the horse. Thereafter, and following the removal of the cause to the District Court for the Southern District of Florida, a trial by jury was had and at the conclusion of all of the evidence the court granted defendant's motion for a directed verdict on the grounds that the evidence conclusively showed that the decedent's negligence was the sole proximate cause of the accident and that there was no negligence on the part of the defendant or its driver. From the judgment entered on the directed verdict and the order denying his motion for a new trial, plaintiff has appealed.

■ The important question here presented is whether the court committed error in granting appellee's motion for a directed verdict. Appellant rightly insists that in determining whether or not the evidence was sufficient to take the case to the jury, we must construe the evidence in the light most favorable to him, giving to him the benefit of every favorable inference which may be fairly drawn therefrom. This we shall do.

The testimony discloses that the accident occurred on the afternoon of October 22, 1954, shortly before five o'clock, at a point where U. S. Highway 17, a two-lane hardsurfaced highway, intersects a dirt road known as Palmetto Street which is located near the Town of Palatka, Florida. The day was clear

and the road surfaces were dry. About one-half mile north of the point of collision and near Rice Creek, the highway which runs in a generally north-south direction crosses a railroad track which leads into a nearby paper mill, and some two hundred fifty feet south of the Palmetto Street intersection there is a second railroad crossing on Highway 17 which marks the city limits of Palatka. Between these two crossings and on both sides of the highway are drainage ditches, but the terrain is otherwise generally level. South of the intersection in question are located several stores and houses and there is also a small country store situated on the north side of Palmetto Street some seventy-five feet west of the highway. Between the store and the highway is an open field overgrown with high bushes and dense underbrush, and as a consequence eastbound traffic on Palmetto Street is not clearly visible to persons approaching the intersection from the north on Highway 17, until such traffic is within forty feet from the western edge of the highway.

Immediately prior to the accident, defendant's passenger bus, measuring thirty-two feet in length, was proceeding south on the highway en route to St. Petersburg by way of Palatka. At the same time on Palmetto Street, the decedent was riding plaintiff's three year old work horse in an easterly direction toward the intersection of the dirt road and Highway 17. The driver of the bus who had travelled this particular road for more than eleven years brought the vehicle to a full stop north of the intersection at the railroad crossing near Rice Creek and resumed a speed estimated by him to be fifty to fifty-five miles per hour. As he approached the intersection, he removed his foot from the accelerator in anticipation of another full stop at the second railroad crossing and the bus had slowed to a speed estimated to be forty-five to fifty miles per hour when the horse and rider came into view from behind the bushes and underbrush some thirty-five feet from the right or west side of the highway.

---

1. Section 768.01, Florida Statutes, 1955, F.S.A.

The horse was trotting or galloping toward the highway and the bus driver testified that he applied his brakes immediately upon realizing that the boy "wasn't going to be able to stop before he got out into the highway." The next instant the collision occurred at or about the center of the right lane of traffic on Highway 17. The impact shattered the left windshield and two front headlight lenses, and knocked the driver's foot off the brake pedal. Upon recovering his balance, the driver again applied his brakes, which were in good mechanical condition, and was successful in bringing the bus to a stop at a point opposite where the boy's body lay in the ditch off the left shoulder of the highway.

It further appears that the decedent who had ridden this particular horse on numerous occasions had been trotting or galloping the horse for at least two blocks before he reached the store on Palmetto Street. And as he passed the store, a dog began running behind the horse, barking at its heels. All of the eyewitnesses to the accident were in agreement that the decedent did not slacken the speed of the horse or alter his course before entering the highway, and one of them testified that the boy was trotting the horse and was looking down at the dog, "* * * and when he was coming on the dogs was making so much fuss barking, I imagine he was paying all his attention to the dog * * * and when he runned upon the highway between four and five feet, why the bus struck him."

The record standing thus, we cannot agree with appellant's contentions that there was evidence: (1) that after the bus driver saw the horse and rider, "he should have had sufficient time in which to stop the bus prior to the accident;" (2) that the bus was "speeding" at the time of the accident and that the driver failed to keep the vehicle under proper control so as to avoid the collision; and (3) that the driver did not exercise due care in his attempt to prevent the accident. The necessity for our conclusion is particularly obvious because the record is devoid of probative evidence supportive of any of these claims. As to the first contention, the testimony of the driver and of a passenger on the bus, which is the only evidence in the record which bears on the approximate location of the bus when the horse and rider first came into view, is set forth in the margin,[2] and while not definite in yards or

---

2. The testimony bearing on this matter is as follows:

The bus driver:

"Q. How far were you from the intersection on U.S. 17 where the impact occurred, how far were you when you saw the boy? A. I don't know exactly how many feet. It wasn't very far back.

"Q. In distance, could you measure some object here and tell it to the jury? A. Giving distances are deceiving. I would be afraid to say at this time just exactly how far it was.

"Q. You don't want to make an estimation, how far it is from you to the chairs, or from here to the back of the hall there? A. A guess, or an estimate, about between, maybe, to the first row of chairs there, this side maybe. That's a guess, an estimate."

Mary Ann Grant, a passenger on the bus:

"Q. How far away from U.S. 17—How far away from the intersection was the bus? A. I couldn't say exactly. It was a good—well, a good distance.
* * * * *

"Q. Well, would you make a rough estimation? Was it as far as from here to the back of the court room? Was it that distance? A. I don't believe it was that far.

"Q. About how far do you think? A. That's a hard question to answer. I'm not too sure.

"Q. Well, I don't—If you are not able to say, recite, as near as you can, the approximate distance from the benches here, say the second row of benches there, and the rest of the court room. A. Counting which one now?

"Q. Take into consideration the front row of benches here in the court room just beyond the iron railing. Would it have been the first row, the second row, the third row, or the fourth row?
* * * * *

"A. My guess is that it was about where the second row is there.

"Q. Now that's the second row of seats in the court room? A. I'm not saying for sure, but that's the best I remember."

feet, was sufficiently descriptive of the distance to warrant a determination by the trial court of whether, as a matter of law, the bus driver had sufficient time in which to stop the bus prior to the accident after he perceived the decedent's perilous situation. Likewise, and with reference to the alleged "speeding" of the bus, the driver's testimony that he was proceeding at a speed well within the legal limit, was uncontradicted, and appellant adduced no evidence whatsoever of facts from which the jury could justifiably conclude that the force of the impact was proof that the bus was travelling at any speed other than that testified to by the driver. As to appellant's third claim, we deem it sufficient to say that the record conclusively shows that after the appellee's driver saw the decedent he attempted by such means as were within his control to avoid colliding with the rapidly approaching horse. He could not swerve into the north-bound lane, as there was oncoming traffic of two or three automobiles within two hundred fifty feet of the point of impact and to swerve to the right would have increased the risk of danger to the horse and rider approaching from that direction as well as endangered the lives of his passengers had the bus run into the ditch.

 Appellant also raises a constitutional objection, *viz.*, that the trial court, directing the verdict for the appellee, denied appellant his federal and state constitutional right to have the issue in his case tried by a fair and impartial jury. This objection is without substance and requires no discussion. Galloway v. United States, 319 U.S. 372, 63 S.Ct. 1077, 87 L.Ed. 1458; White v. New York Life Ins. Co., 5 Cir., 145 F.2d 504, 509.

A further contention of appellant is that the trial judge erred in permitting the driver of the bus, over objection, to explain the inconsistency between a statement which he made at the trial and a statement previously made by him under oath in a pre-trial deposition. Appellant cites no authority in support of his contention and we have found none. Indeed, the authorities are all one way and to the effect that if a witness admits prior statements attributed to him, he may explain or qualify their meaning, shows that they were made under a mistake, or that there was no discrepancy between them and his testimony. See 70 C.J. § 1331; 98 C.J.S. Witnesses § 621 and numerous cases cited thereunder.

Other matters urged by counsel have been considered, but we are of the view that the record discloses no error affecting the substantial rights of the appellant and the judgment appealed from is, therefore, affirmed.

Affirmed.