OPINION Baum, Judge: In 1958 the Cuban joint venture distributed to Ainsley, petitioner’s wholly owned Panamanian corporation, $549,-876.89 in excess of Ainsley’s contribution to the venture for that season; and in determining the deficiency herein, the Commissioner included that amount directly in petitioner’s 1958 gross income. He seeks to support that determination in this Court upon either of two alternative theories: (1) That Ainsley was a sham, and that its corporate indentity must be disregarded, with the consequence that income otherwise chargeable to it must be treated as petitioner’s income under section 61 of the 1954 Code;[1] (2) that the “principal purpose” of petitioner’s acquisition of control of Ainsley was the “evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance” within the meaning of section 269(a) (1), so that the Commissioner was empowered to distribute, apportion, or allocate gross income, deductions, credits, or allowances to the extent provided by section 269(b) (2),[2] which, he contends, authorizes the inclusion of the amount in question in petitioner’s gross income. We hold that neither of these theories supports the deficiency upon the record before us. 1. Disregard of Corporate Entity. — It is undisputed that Ainsley was a properly organized corporation and that it existed as a legal entity. Nevertheless, if it in fact was organized or utilized solely as a device for defeating taxes and carried on no business of consequence, there is ample authority to justify ignoring the corporate form. See Aldon Homes, Inc., 33 T.C. 582, and cases cited at 596, 597. What was the situation here ? We have uncontradicted testimony that petitioner had valid and substantial business reasons for incorporating Ainsley. He was a broker or commission merchant, selling produce in the United States. He had never previously engaged in a farming venture, and was concerned about its risky character, its possible threat to his personal fortune and its possible effect upon his license under the Perishable Commodities Act. By incorporating Ainsley to take his place in the joint venture, he would thus insulate or attempt to insulate these matters from the risk that was being undertaken. We have corroborating testimony that he outlined these considerations to Zinn, the attorney who was engaged to incorporate Ainsley for him, and we have reached the conclusion on the record, although without strong conviction, that petitioner in fact was moved by these considerations in substantial part, in having Ainsley incorporated. To be sure, we are not so naive as to think that tax consequences were not taken into account in organizing Ainsley, and the record suggests that tax considerations did play a part. The only apparent purpose for the formation of a Panamanian corporation rather than a U.S. corporation was to avoid payment of any tax on the income from the joint venture as it was earned. But, prior to the Eevenue Act of 1962, adding section 951 to the 1954 Code, there was a loophole in the Code which permitted that result, and petitioner was free to take advantage of it. The question before us is not to be clouded by the use of a foreign corporation, rather than a domestic corporation, to escape U.S. taxation, except as it may bear on the question whether that corporation was in fact “formed for a substantial business purpose or actually engage[d] in substantive business activity.” Aldon Homes, Inc., supra at 597. Our concern is whether petitioner had any substantial bona fide business reason for forming a corporation to participate in the venture, or whether the corporation formed, Ainsley, did in fact conduct any “business” in the ordinary meaning. If these questions may be answered in the affirmative, then the existence of Ainsley must be recognized for tax as well as corporate purposes. Moline Properties, Inc. v. Commissioner, 319 U.S. 436, 439; National Investors Corporation v. Hoey, 144 F. 2d 466, 467-468 (C.A. 2); Aldon Homes, Inc., 33 T.C. 582, 596. Petitioner has spent most of his life in activities relating to the distribution of domestic and foreign produce in the United States, and during the years 1951 to 1956 he sold in the United States tomatoes and cucumbers grown by García and Copa in Cuba. Prior to the fall of 1956 petitioner had no connection with the growing of produce. About September 1956, Garcia invited petitioner to invest in a joint venture the purpose of which was to farm vegetables in three different provinces in Cuba. Garcia was to be in charge of the operation and was plainly the dominant member of the venture. Belying upon bis confidence in petitioner, García agreed to accept a corporation owned and controlled by petitioner as a member-of the venture in place of petitioner himself. Petitioner contributed $15,000 to Ainsley which he had formed for that purpose, and it in turn contributed $13,000 in 1956 to the joint venture. Having been in the business of selling produce for a long period of time, and never having had any association with any farming operations, petitioner’s desire to separate these two distinct businesses was natural, particularly in view of the risky character of the projected farming venture. The fact that the venture turned out to be highly successful is irrelevant. The disproportionately large profits were due in large part, as disclosed by the evidence, to unusually bad weather in Florida that enabled the competitive Cuban produce to sell at more favorable terms in this country — a circumstance that could not reasonably have been counted upon in advance. Nor may it be said that Ainsley’s minimal activity did not constitute the conduct of business. The point is that Ainsley was formed for only a limited purpose, namely, to invest in the joint venture, and it in fact carried out that purpose. This was a sufficient amount of business in these circumstances to justify recognition of the corporation if in fact such business was done by Ainsley rather than by petitioner. Petitioner as sole stockholder of Ainsley, although not an officer or director thereof, caused Ainsley to enter into the joint venture in each of the 3 years of its operation. Pursuant to a resolution of the directors of Ainsley, petitioner was given sole and absolute control over its bank account in Panama. Distributions from the venture were made annually to Ainsley and deposited in its account. Prior to liquidation, the moneys in that account were used to invest and reinvest in the Cuban farming venture and to pay certain corporate expenses in Panama. The excess remained in the corporate bank account and was not used for any of petitioner’s personal or business needs.[3] While the matter may not be entirely free from doubt, we think that petitioner was acting on behalf of Ainsley rather than on his own behalf, and that it was Ainsley rather than petitioner that must be regarded as having invested in the j oint venture. In addition, as already noted, while the evidence presented, including the fact that Ainsley was incorporated in Panama rather than in the United States, convinces us that petitioner was aware of and considered the tax implications of setting up a corporation, and in particular a foreign corporation, we are also reasonably satisfied that petitioner had substantial bona fide business reasons for arranging his affairs in this manner. In the circumstances, we cannot disregard the existence of Ainsley as the Commissioner would have us do. 2. Section 269. — The Government argues alternatively that, apart from disregarding the corporate fiction, the Commissioner’s determination is correct under section 269. Under subsection (a) (fn. 2, supra), if petitioner’s “principal purpose” in acquiring control of Ains-ley was “evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance” which he would not otherwise enjoy, “then such deduction, credit, or other allowance shall not be allowed.” Our decision above on the first point that petitioner had substantial bona fide business reasons for incorporating Ainsley goes far to render section" 269 inapplicable. In any event, however, section 269, by its terms, does not apply here. In determining the deficiency for 1958 the Commissioner added to petitioner’s reported income Ainsley’s profit from the joint venture for that year. He did not disallow any “deduction, credit, or other allowance” claimed by petitioner. As a consequence, section 269 is not applicable. John F. Nutt, 39 T.C. 231, 250, remanded in another respect 351 F. 2d 452 (C.A. 9), so holds, and we regard it as decisive here. The Government’s attempt to distinguish the Nutt case on the ground that the corporations therein had not yet been liquidated is not persuasive. To be sure, a deduction was claimed here by petitioner under section 1202 [4] in 1959 as a result of the reported capital gain upon liquidation of Ainsley. But the Commissioner did not disallow that deduction. He relieved petitioner of all tax with respect to capital gain on the 1959 liquidation, thereby determining an overpayment rather than a deficiency for 1959. Nor is the Government’s position supportable under section 269(b) (2), which presupposes the applicability of subsection (a) in the first instance. Moreover, the very language of (b) (2) is inapplicable here, because it authorizes the Commissioner “to distribute, apportion, or allocate gross income and distribute, apportion, or allocate the deductions, credits, or allowances, * * * between or among the corporations, or properties, or parts thereof, mmol/oedP (Emphasis added.) This statute was drawn with a high degree of specificity, and there was not involved herein any distribution, apportionment, or allocation “between or among * * * corporations or properties.” Whatever reason there may have been for drafting the statute so narrowly, it does not cover the case before us. Decision will be entered, under Bule 50. SEC. 61. GROSS INCOME DEFINED. (a) General Definition. — Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: * * ***** (2) Gross income derived from business ; * * ***** (13) Distributive share of partnership gross income; SEC. 269. acquisitions MADE TO EVADE OR AVOID INCOME TAX. (a) In General. — If— (1)any person or persons acquire, or acquire! on or after October 8, 1940, directly or indirectly, control of a corporation, * * * *****>!'* and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. For purposes of paragraphs (1) and (2), control means the ownership of stock possessing at least 50 percent of the total combined voting power of all classes of stock entitled to vote or at least 50 percent of the total value of shares of all classes of stock of the corporation. (b) Power of Secretary or His Delegate To Allow Deduction, etc., In Part.— In any case to which subsection (a) applies the Secretary or his delegate is authorized— (1) to allow as a deduction, credit, or allowance any part of any amount disallowed by such subsection, if he determines that such allowance will not result in the evasion or avoidance of Federal income tax for which the acquisition was made ; or (2) to distribute, apportion, or allocate gross income, and distribute, apportion, or allocate the deductions, credits, or allowances the benefit of which was sought to be secured, between or among the corporations, or properties, or parts thereof, involved, and to allow such deductions, credits, or allowances so distributed, apportioned, or allocated, but to give effect to such allowance only to such extent as he determines will not result in the evasion or avoidance of Federal income tax for which the acquisition was made; or (3) to exercise his powers in part under paragraph (1) and in part under paragraph (2). There Is a $100 cheek to petitioner -which is unexplained, but there is no suggestion that it was used for petitioner’s personal benefit. From the pattern of the corporation’s account it seems likely that the proceeds of that check were used to maintain the corporation as a viable Panamanian entity. SEC. 1202. DEDUCTION FOR CAPITAL GAINS. In the case of a taxpayer other than a corporation, if for any taxable year the net long-term capital gain exceeds the net short-term capital loss, 50 percent of the amount of such excess shall he a deduction from gross income. * * *