**ARJEN MOTOR HOTEL CORPORATION d/b/a Paul Miller Beach Motel, Appellant,**

v.

**GENERAL ACCIDENT FIRE & LIFE ASSURANCE CORPORATION, Ltd., Appellee.**

No. 23797.

United States Court of Appeals
Fifth Circuit.

June 15, 1967.

T. G. LaGrone, James O. Driscoll, Orlando, Fla., for appellant.

George C. Winn, Tampa, Fla., of Fowler, White, Collins, Gillen, Humkey & Trenam, Tampa, Fla., for appellee.

Before PHILLIPS,* THORNBERRY and DYER, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellant Arjen Motor Hotel Corporation brings this appeal from an adverse judgment in an action instituted by Arjen to recover under a multi-peril insurance policy issued by appellee for the partial collapse of its beach motel restaurant. At the close of appellant's case in the court below, appellee moved for a directed verdict on the theory that the evidence introduced by appellant had affirmatively established that the alleged loss fell within the exclusionary provisions of the policy, thereby precluding liability as a matter of law. Subsequent to an extended discussion with counsel for both parties, the District Court sustained the motion and instructed the jury to enter a verdict in favor of appellee. Concluding that no reversible error occurred, we affirm.

On October 19, 1962, the date of appellant's loss, there was in full force a multi-peril insurance policy issued by appellee providing coverage for appellant's beach motel and restaurant located on a seawall adjacent to the Atlantic Ocean in Indialantic, Florida. The evidence, as established by the testimony of appellant's own witnesses, reflects that on the evening of October 17, appellant's general manager and president was notified of the presence of a hurricane located off the Florida coast. During the evening the wind began to increase in intensity and waves began to wash against the seawall. By the following day, October 18, waves were striking the side of the motel restaurant, which formed a portion of the seawall, at a height of three to four feet. About noon, a crack was discovered in the northeast corner of the restaurant near the point where the seawall joined the side of the building. It was also discovered that a portion of the seawall had begun to pull away from the building and was leaning out toward the ocean. The portion of the seawall that joined the restaurant building was immediately cut free in an effort to prevent further damage. During the afternoon and evening attempts were made to shore up the foundation of the restaurant building with sandbags. As a further precaution corrugated metal sheeting was placed along the foundation and cement was poured behind it in order to provide additional support. These efforts were largely unsuccessful, however, because the waves, which were growing in height and force, tended to wash out both the sandbags and cement. On the following morning, October 19, a portion of the restaurant collapsed and fell to the beach.

Appellant predicates its right to recover for the losses sustained during the storm upon the following provision of the policy:

III. PERILS INSURED AGAINST

The policy insures * * * against all direct loss to the property covered by the following perils except as otherwise specifically provided. * * *

I. Collapse of Building(s): Loss by collapse shall mean only the collapse of the building(s) or any part thereof, including direct loss by collapse or fall of a tank forming part of an automatic sprinkler system. This Company shall not be liable as respects this peril for loss to outdoor radio and television antennas including their lead-in wiring, masts and towers, outdoor equipment, gutters and downspouts, fences, lawns, trees, shrubs and plants, pavements, patios, foundations, retaining walls, bulkheads, piers or wharves when such loss is

---

* Of the Tenth Circuit, sitting by designation.

caused by freezing, thawing, or by the pressure or weight of ice or water whether driven by wind or not; all except as the result of the collapse of a building.

Appellee, on the other hand, urges that the evidence introduced by appellant conclusively demonstrates that the loss fell within the following exclusionary provision of the policy:

## V. EXCLUSIONS

This policy does not insure against loss: * * *

B. Caused by, resulting from, contributed to or aggravated by any of the following:

1. earthquake, volcanic eruption, landslide or any · other earth movement;

2. flood, surface water, waves, tidal water or tidal wave, overflow of streams or other bodies of water, or spray from any of the foregoing, all whether driven by wind or not; * * *

4. water below the surface of the ground including that which exerts pressure on or flows, seeps or leaks through sidewalks, driveways, foundations, walls, basement or other floors, or through doors, windows or any other openings in such sidewalks, driveways, foundations, walls or floors;

unless loss by fire or explosion ensues, and then this Company shall then be liable only for such ensuing loss.

Appellant initially contends that the trial court erred in denying its motion for partial summary judgment. That motion was based upon the theory that the Exclusions provision of the policy should be interpreted as having no limiting effect whatsoever upon the coverage provided by the Perils-Insured-Against provision. Appellant urges that the sole purpose of the Exclusions provision is to foreclose the possibility that the policy, because of its comprehensive nature, might be regarded as extending coverage to other perils not specifically covered by the Perils-Insured-Against provision. To justify this restrictive interpretation, appellant emphasizes that many of the definitions appearing in the Perils-Insured-Against provision in themselves provide specific exclusions to coverage of the perils they define. It is urged that the more general Exclusions provision cannot therefore be looked upon as imposing limitations to coverage in addition to those contained in the definitions of the perils themselves, but must instead be construed as excluding liability for only those losses incurred wholly independently of the specific perils insured against. Appellant would thus have us conclude that since its loss was occasioned by a collapse, a peril specifically covered by the Perils-Insured-Against provision, the additional fact that the collapse may have been "caused by, resulted from, contributed to or aggravated by" one or more of the perils described in the Exclusions provision cannot be properly held to preclude recovery. A single reading of the policy as a whole clearly militates against such a novel construction.

 Looking to the formal structure of the policy, it is apparent that the Perils-Insured-Against provision and the Exclusions provision are accorded equal precedence. When the two provisions are read in conjunction no ambiguity results despite the fact that the comprehensive Exclusions provision does serve to restrict, in some instances rather severely, the coverage of the Perils-Insured-Against provision. These limitations are readily apparent, however, upon a reading of the policy as a whole. See Miller Elec. Co. v. Employers' Liab. Ins. Co., Fla.App.1965, 171 So.2d 40; New Amsterdam Cas. Co. v. Addison, Fla.App.1964, 169 So.2d 877. When, as here, the language of the policy is free from conflicts and ambiguity, we are not disposed to call an insurer to task for coverage of risks ex-

pressly excluded, our function being restricted to that of enforcing the unambiguous terms of the agreement as written by the parties even though the result may on occasion appear unduly stringent. Electron Mach. Corp. v. American Mercury Ins. Co., 5th Cir. 1961, 297 F.2d 212, 214; Zipperer v. State Farm Mut. Auto. Ins. Co., 5th Cir. 1958, 254 F.2d 853, 856; Canal Ins. Co. v. Dougherty, 5th Cir. 1957, 247 F.2d 508, 512. While the language in the Exclusions provision purporting to exclude those losses "caused by, resulted from, contributed to or aggravated by any of" the perils enumerated in that provision may appear inordinately comprehensive, it cannot for that reason alone be held to give rise to ambiguity. Viewing the policy in its entirety, we are left with the firm conviction that the plain wording of the Exclusions provision effectively excludes liability for loss occasioned by collapse if it is in fact established that such loss was contributed to or aggravated by waves or tidal water.

■■ We are of the further conviction that the facts of this controversy point to no other conclusion but that wave action and tidal water contributed to the collapse of appellant's restaurant building. It is true that the evidence introduced by appellant successfully established that the building did in fact collapse, thereby bringing the loss within the Perils-Insured-Against provision of the policy. Ordinarily, such prima facie demonstration of coverage would shift the burden to the insurer of establishing whether liability is precluded by some exclusionary provision of the policy. See Connecticut Gen. Life Ins. Co. v. Breslin, 5th Cir. 1964, 332 F.2d 928, 933. See generally 21 Appleman, Insurance Law & Practice § 12096. Here, however, the same evidence developed by appellant to bring the loss within the Perils Insured Against provision of the policy has the additional effect of conclusively establishing that wave action, an excluded peril, at the very least contributed to the collapse of the restaurant building. Viewing the facts in a light most favorable to appellant, we are unable to discover any evidence whatsoever which gives rise to a reasonable inference that anything other than wave action caused the collapse.[1] When, as here, the evidence introduced by the insured in and of itself demonstrates that the loss resulted from an excluded peril to such an extent that the trier of fact could not reasonably infer otherwise, we are unable to conclude that the direction of a verdict in favor of the insurer at the close of the insured's case is improper. See Al Berman, Inc. v. Aetna Cas. & Sur. Co., 3d Cir. 1954, 216 F.2d 626, 629. See also Baron Tube Co. v. Transport Ins. Co., 5th Cir. 1966, 365 F.2d 858, 861; Wells v. Warren Co., 5th Cir. 1964, 328 F.2d 666, 668–669, and cases cited therein.

■ It is further urged that entry of the directed verdict had the prejudicial effect of preventing appellant from developing rebuttal evidence to demonstrate that appellee was estopped to rely upon the policy exclusion. A careful review of the record compels the conclusion that this contention is likewise devoid of merit. In the course of presenting its case in chief, appellant sought to introduce the testimony of appellee's agent together with certain correspondence between the agent and appellant's president on the theory that such evidence was essential to the development of the issue of estoppel. The trial court refused to admit the evidence, ruling on two separate occasions that it was irrelevant to the issue of estoppel.[2] It is sufficient to say,

---

1. To this extent, the instant controversy is clearly distinguishable from those cases where the courts have properly submitted the issue of liability to the jury despite very strong evidence of wave action (an excluded risk) because the insured had introduced *some* evidence of causation by a covered risk. See Westchester Fire Ins. Co. v. Hanley, 6th Cir. 1960, 284 F.2d 409; Fireman's Fund Ins. Co. v. Hanley, 6th Cir. 1958, 252 F.2d 780.

2. Record, pp. 47–48, 199–202.

without detailed discussion of the specific nature of the proffered evidence, that its exclusion was not reversible error because it was clearly insufficient as a matter of law to raise the issue of estoppel. Reisman v. New Hampshire Fire Ins. Co., 5th Cir. 1963, 312 F.2d 17, 20; Carnes & Co. v. Employers Liab. Assur. Corp., 5th Cir. 1939, 101 F.2d 739, 742; Birmingham Fire Ins. Co. v. Sharrow, S.D.Fla.1965, 249 F.Supp. 429, 431. Accordingly, the judgment of the District Court is

Affirmed.