GREEN LIGHT COMPANY et al., Appellants,

v.

UNITED STATES of America, Appellee.

No. 25337.

United States Court of Appeals Fifth Circuit.

Dec. 26, 1968.

Gordon G. Hawn, Willis T. Taylor, Ralph Langley, San Antonio, Tex., for appellant, Foster, Lewis, Langley, Gardner & Hawn, San Antonio, Tex., of counsel.

Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, Harry Marselli, Harry Baum, Marco S. Sonnenschein, Myron C. Baum, Attys., Dept. of Justice, Washington, D. C., Ernest Morgan, U. S. Atty., Ted Butler, Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before RIVES and DYER, Circuit Judges, and MEHRTENS, District Judge.

MEHRTENS, District Judge.

This appeal is from a judgment entered on a directed verdict in favor of the Appellee, United States of America. We reverse and remand for a new trial.

In November, 1947, William J. Klauss and Jim Fred White formed a partnership known as Klauss-White which engaged in the business of manufacturing insecticides, rodenticides and herbicides. These products were sold to jobbers and distributors within and without the State of Texas under the name of "Green Light." Sometime prior to 1952, Klauss became sole owner of the business assets except for a twenty per cent interest transferred in trust for his minor children. In December, 1956, Klauss organized three sales corporations to distribute the "Green Light" products within the State of Texas; namely, Green Light Company of North Texas, Green Light Company of East Texas, and Green Light Company of South Texas. The Green Light Plant Food Company was organized in August, 1959, and in November, 1959, Klauss organized a fourth sales corporation, Green Light Company of West Texas, as well as four additional area sales corporations to serve as distributors of Green Light plant food.

In December, 1959, Klauss' business was incorporated into Green Light Company. The operating assets of the business were transferred to Green Light Company, but William J. Klauss retained ownership of the registered trade name as well as the real estate used for production purposes. Green Light Company continued to manufacture the goods formerly produced by Klauss-White and continued to supply the four area sales corporations, who in turn furnished the products to jobbers and distributors within their respective areas of the State. All sales outside the State were made directly by Green Light Company. Thus, at this point there was a company manufacturing insecticides with four related sales corporations, and a company manufacturing plant food with four related sales corporations. The Green Light Plant Food Company was unsuccessful and was dissolved, along with its sales corporations, in July, 1961. In December, 1961, Power Chemical Corporation was organized to formulate products similar to but of lower quality than those of the Green Light Company. These products were distributed by Power Chemical directly to discount houses primarily interested in a low-cost product.

In each instance the corporations were separately formed and issued their stock in a proportion equal to the interests held by Klauss and the trustees. Each corporation had its principal place of business in San Antonio, Texas, had identical officers and directors, maintained separate books and records, kept books according to the accrual method of

accounting, and filed separate Federal Income Tax returns for fiscal years 1960, 1961, 1962 and 1963. Each corporation showing a profit for such years claimed the corporate surtax exemption of $25,000 allowed under 26 U.S.C. § 11(d). The North Texas and East Texas Corporations claimed the surtax exemption in 1960, 1961, and 1962; but in 1963 they filed an election to be taxed as small business corporations and claimed no surtax exemption in that year.

In 1964, after examining the tax returns of each of the corporations for 1960 through 1963, the Commissioner of Internal Revenue determined that the surtax exemptions allowed under 26 U.S.C. § 11(d) had been improperly claimed because in his opinion the "principal purpose" of organizing the individual corporations was to evade or avoid Federal Income Taxes. It was further determined that by application of 26 U.S.C. § 269, Green Light Company and Power Chemical Corporation were entitled to only one $25,000.00 exemption, and that only one $25,000.00 exemption was allowable to the four Green Light Sales Corporations and the four plant food sales corporations. A tax deficiency was then assessed accordingly. Appellants paid the additional taxes and interest, filed claims for refund of those amounts, and subsequently instituted this action.

■ Appellants' position has been that the "principal purpose" of incorporating Green Light Company, Green Light Plant Food Company, Power Chemical Corporation, and the area sales corporations was to insulate the assets of the business against product liability claims rather than to evade or avoid Federal Income Taxes by cumulating surtax exemptions under 26 U.S.C. § 11(d). The only issue at trial was whether or not the "principal purpose" of organizing the several related corporations was to evade or avoid Federal Income Taxes. For evasion or avoidance of Federal Income Taxes to be the "principal purpose" of acquiring control of a corporation it must exceed all other purposes in importance. Hawaiian Trust Co., Ltd. v. United States (9th Cir. 1961) 291 F.2d 761; 26 C.F.R. § 1269.3 at 625. The determination of "principal purpose" is one of fact, and requires a scrutiny of all circumstances in which the transaction or course of conduct occurred in connection with its tax consequences. Southland Corporation v. Campbell (5th Cir. 1966), 358 F.2d 333, 336–337; Bonneville Locks Towing Company v. United States (9th Cir. 1965), 343 F.2d 790, 791; 7 Mertens, Law of Federal Income Taxation, § 38.69 at 220–221.

At trial, Klauss testified that Green Light Company, Green Light Plant Food Company, Power Chemical Corporation, and the related sales corporations, were incorporated to insulate the assets of the business against claims of injured consumers. Green Light Products contained chemicals of a highly toxic nature which were likely to cause injury if improperly handled; therefore, Appellants' business was exceptionally vulnerable to product liability claims. In 1952, Klauss, as manufacturer of Green Light products, was joined with another, a distributor of "Green Light" insecticide, as a defendant in a products liability suit. The jury returned a verdict for plaintiffs, but the Court entered a judgment *non obstante veredicto*, finding that there could be no relief on a breach of warranty theory where no privity of contract existed between the parties. The Texas Civil Court of Appeals affirmed, stating that the doctrine of implied warranty was not an adequate basis for relief in that case. The Court compared that case to one in which a non-negligent manufacturer is liable to one who is injured from eating contaminated food produced by the manufacturer, pointing out that relief there is based on the demands of public policy requiring protective standards for the public health, but that no authority was cited requiring a further extension of that policy to provide relief in the case

before it. Brown v. Howard (Tex.Civ. App.1955), 285 S.W.2d 752.

During the pendency of the products liability suit, Klauss' liability insuror cancelled its policy. Thereafter, but prior to incorporating any of the Green Light companies, Klauss discussed the problem of product liability and corporate organization with his attorney, accountant and banker. Diligent, but unsuccessful, efforts were made to secure adequate liability insurance to protect the assets of Klauss-White, and shortly after the products liability suit was concluded, three of the four sales corporations for "Green Light" products were formed. The announced purpose for organizing the sales corporations, and for subsequently forming Green Light Company, Green Light Plant Food Company, Power Chemical Corporation, and the related sales corporations, was to limit product liability claims and protect the assets of each corporation from liability for claims against any of the other corporations.

The only issue on appeal is whether or not sufficient evidence was presented to create a jury question as to Klauss' "principal purpose" in forming the several related corporations. In Wells v. Warren Company (5th Cir. 1964), 328 F. 2d 666, 668–669, this Court said in essence that a motion for a directed verdict should not be granted if there is substantial credible evidence which would support a verdict for the party against whom the motion is made; that if there is a conflict in substantial evidence, or if there is no conflict but reasonable minds may draw contrary inferences from the same evidence, then a jury question is presented. See also, Helene Curtis Industries, Inc. v. Pruitt (5th Cir. 1967), 385 F.2d 841, 850–851; Arjen Motor Hotel Corporation v. General Accident Fire & Life Assurance Corporation, Ltd. (5th Cir. 1967), 379 F.2d 265 at 268; and Necaise v. Chrysler Corporation (5th Cir. 1964), 335 F.2d 562, 567–568. In determining whether the evidence was sufficient to create a jury question this Court must consider the evidence adduced in a light most favorable to the appellants, giving them the benefit of every favorable inference which might be fairly drawn therefrom. West v. Greyhound Corporation (5th Cir. 1958), 254 F.2d 541.

■ The incorporation of a business to insulate its assets has been held to constitute a legitimate business purpose, Siegel v. Commissioner of Internal Revenue (1966) 45 T.C. 566; and Commissioner of Internal Revenue v. Chelsea Products, Inc. (1951), 16 T.C. 840, aff'd (3rd Cir. 1952), 197 F.2d 620. Likewise, the formation of several corporations to do the same business in different geographical areas may be considered incorporating for a legitimate business purpose. Louisville Store of Liberty, Kentucky, Inc. v. United States (1967), 376 F.2d 314 at 319, 179 Ct.Cl. 847, cf. 7 Mertens, Law of Federal Income Taxation, § 38.69 (1967). Therefore, one might infer that Appellant corporations were formed with a legitimate business purpose in mind. Furthermore, considering the likelihood of the Klauss-White partnership being subjected to an increasing number of product liability claims, its apparent inability to secure adequate insurance coverage, and Klauss' consultation with his attorney, accountant and banker regarding these problems, it is not unreasonable to infer that protection of the assets of the business constituted the "principal purpose" of forming the related corporations. Thus, the District Court Judge erred in granting the motion for directed verdict, and should have submitted the question of "principal purpose" to the jury for determination.

Reversed and remanded for new trial.

RIVES, Circuit Judge (specially concurring):

While I concur fully, I would note that if the district judge had reserved decision on the motion for directed verdict as permitted by Rule 50(b), Fed.R. Civ. P., another trial would not be necessary.