**SUPREME INVESTMENT CORPORATION**

v.

**UNITED STATES of America.**

**Civ. A. No. 14909.**

United States District Court,
W. D. Louisiana,
Monroe Division.

Dec. 11, 1970.

Robert L. Curry, III, Monroe, La., for plaintiff.

Johnnie M. Walters, Myron C. Baum, D. Wendell Barnett, Attys., Tax Div. U. S. Dept. of Justice, Washington, D. C., Donald E. Walter, U. S. Atty., and Edward V. Boagni, Asst. U. S. Atty. Shreveport, La., for defendant.

## OPINION

DAWKINS, Chief Judge.

Supreme Investment Corporation (Supreme) seeks refund of $852 plus interest for taxes allegedly illegally and erroneously paid for the fiscal year ending November 30, 1965. As in most tax cases, what really is at issue here, under the posture of principle, is principal. The principal involved is about $83,000 of potential income which could escape taxation. The principle in question is

whether plaintiff is entitled to a stepped-up basis on a note acquired by liquidation of its subsidiary under provisions of the Internal Revenue Code more specifically discussed below.

Plaintiff is a Louisiana corporation incorporated in 1959 with its principal place of business in Ouachita Parish. Prior to February 17, 1965, Supreme had a total of 87½ outstanding shares of stock owned by R. D. Kellogg. On that date, Kellogg sold to Thomas W. Leigh and Robert L. Curry III ten shares each of the stock at a price of $250 per share. On February 22, 1965, plaintiff redeemed 57½ shares of R. D. Kellogg's stock; plaintiff's outstanding stock thereafter being owned ten shares each by Messrs. Kellogg, Leigh and Curry. Curry and Leigh were Kellogg's attorneys both before and during the transactions here in question. Mr. Curry holds a Master's degree in the Law of Taxation.

February 26, 1965, Supreme purchased all of the outstanding stock of CKS Corporation (CKS), a Louisiana corporation also with its principal place of business in Ouachita Parish, from Robert L. Kellogg, the son of R. D. Kellogg. Robert owned all the CKS stock prior to February, 1965, and allegedly (Robert did not testify) wanted to dispose of it because of difficulties he was encountering with the corporation—primarily tax difficulties. Both father and son were advised by lawyers and tax men not to enter into a sale between themselves because of detrimental tax consequences.[1] To avoid this, R. D. Kellogg was advised to, and did, reduce his ownership of plaintiff's stock below fifty per cent of the total shares outstanding. In accomplishing this, he effected the above described transaction with Curry and Leigh; and then Supreme purchased CKS Corporation.

April 19, 1965, Supreme elected to liquidate CKS and on April 26, 1965, certain assets, including a promissory note dated July 31, 1956, drawn by Star Motel, Inc., and payable to the order of CKS in the principal amount of $400,000, with 4% per annum interest thereon from date until paid, were transferred by CKS in consideration of plaintiff's surrender of certain liabilities due and owing by CKS. As part of this transaction, plaintiff assumed a $125,000 note payable by Robert Kellogg to his father, R. D. Kellogg. Robert was in his twenties at this time. Curry, who at that time owned one-third of the outstanding shares of Supreme, represented CKS in this transaction as its duly appointed liquidator.

CKS had been reporting its collection on the $400,000 Star Motel note on the installment method authorized by Section 453 of the Code, whereby, in general, the gain realized is recognized ratably over the period of collections upon the note. At the time of its liquidation, CKS had a cost basis of $141,639.80. Plaintiff's adjusted basis in the stock of CKS, together with that portion of the liabilities assumed by plaintiff upon receipt of the obligation, totalled $204,235.37.

Supreme contends that the latter figure should constitute its tax basis in the Star Motel note for federal income tax purposes, and defendant contends that the former figure is the proper tax basis.

Plaintiff contends that the interrelationships between Sections 332,[2] 334(b)

---

1. See Section 318(a) which provides in general that an individual shall be considered as owning stock owned by his children and that a corporation will be considered as owning stock owned by a person who is a fifty per cent or more shareholder of that corporation.

2. § 332. *Complete Liquidations of subsidiaries.*

"(a) *General rule.*—No gain or loss shall be recognized on the receipt by a corporation of property distributed in complete liquidation of another corporation.

(2),[3] 336,[4] and 453(d) (4)[5] of the Revenue Code entitles it to the stepped-up basis. In general, under these sections, when a parent corporation distributes an

(b) *Liquidations to which section applies.*—For purposes of subsection (a), a distribution shall be considered to be in complete liquidation only if—

(1) the corporation receiving such property was, on the date of the adoption of the plan of liquidation, and has continued to be at all times until the receipt of the property, the owner of stock (in such other corporation) possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote and the owner of at least 80 percent of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends) ; and either

(2) the distribution is by such other corporation in complete cancellation or redemption of all its stock, and the transfer of all the property occurs within the taxable year; in such case the adoption by the shareholders of the resolution under which is authorized the distribution of all the assets of such corporation in complete cancellation or redemption of all its stock shall be considered an adoption of a plan of liquidation, even though no time for the completion of the transfer of the property is specified in such resolution; or

(3) such distribution is one of a series of distributions by such other corporation in complete cancellation or redemption of all its stock in accordance with a plan of liquidation under which the transfer of all the property under the liquidation is to be completed within 3 years from the close of the taxable year during which is made the first of the series of distributions under the plan, except that if such transfer is not completed within such period, or if the taxpayer does not continue qualified under paragraph (1) until the completion of such transfer, no distribution under the plan shall be considered a distribution in complete liquidation.
* * * "

**3. § 334. Basis of property received in Liquidations.**
"(b) *Liquidation of subsidiary.*—
* * * * *
(2) *Exception.*—If property is received by a corporation in a distribution in complete liquidation of another corporation (within the meaning of section 332(b)), and if—

(A) the distribution is pursuant to a plan of liquidation adopted—
(i) on or after June 22, 1954, and
(ii) not more than 2 years after the date of the transaction described in subparagraph (B) (or, in the case of a series of transactions, the date of the last such transaction) ; and

(B) stock of the distributing corporation possessing at least 80 percent of the total combined voting power of all classes of stock entitled to vote, and at least 80 percent of the total number of shares of all other classes of stock (except nonvoting stock which is limited and preferred as to dividends), was acquired by the distributee by purchase (as defined in paragraph (3)) during a period of not more than 12 months,
then the basis of the property in the hands of the distributee shall be the adjusted basis of the stock with respect to which the distribution was made. For purposes of the preceding sentence, under regulations prescribed by the Secretary or his delegate, proper adjustment in the adjusted basis of any stock shall be made for any distribution made to the distributee with respect to such stock before the adoption of the plan of liquidation, for any money received, for any liabilities assumed or subject to which the property was received, and for other items.
* * * "

**4. § 336. General rule.**
"Except as provided in section 453(d) (relating to disposition of installment obligations), no gain or loss shall be recognized to a corporation on the distribution of property in partial or complete liquidation."

**5. § 453. Installment method.**
"(d) *Gain or loss on disposition of installment obligations.*—
(1) *General rule.*—If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and—
* * * * *
(4) [as amended by Sec. 13(f) (5) (A), Revenue Act of 1962, P.L. 87–834, 76 Stat. 960, and by Sec. 231(b) (5), Revenue Act of 1964, *supra*, and by sec. 1(b) (2) of the Act of August 22, 1964, P.L. 88–484, 78 Stat. 596]. *Effect of distribution in certain liquidations.*—

installment obligation in the course of corporate liquidation of a subsidiary, the property received in distribution shall have a basis equal to the adjusted basis of the stock with respect to which the distribution was made.

The Government contends *inter alia*[6] that Section 269[7] denies to plaintiff the tax benefits which it seeks. This section provides that if any person or persons acquire, directly or indirectly, control of a corporation, and the principal purpose for which such acquisition was made is evasion or avoidance of federal income tax by securing the benefit of a deduction, credit, or other allowance which such taxpayer would not otherwise enjoy, then such deduction, credit, or other allowance may be disallowed.

Section 1.269–1(a) of the Regulations provides:

"The term 'allowance' refers to anything in the Internal Revenue laws which has the effect of diminishing

tax liability. The term includes, among other things, a deduction, a credit, an adjustment, an exemption or an exclusion."

We agree with the Government's contention that the term "allowance," as used in Section 269, encompasses the benefit sought to be obtained by plaintiff—a benefit which, in the absence of its altered ownership structure and the bringing into play of Section 332, it otherwise could not have obtained. Specifically, this is the benefit granted by Sections 453(d) (4) (A) and 334(b) (2), the non-recognition of gain and the substitution of a stepped-up basis.

The legislative history and the broad scope given Section 269 supports this position:

"This section is designed to put an end promptly to any market for, or dealings in, interest in corporations or property which have as their objective the reduction through artifice of the

(A) *Liquidations to which section 332 applies.*—If—

(i) an installment obligation is distributed by one corporation to another corporation in the course of a liquidation, and

(ii) under section 332 (relating to complete liquidations of subsidiaries) no gain or loss with respect to the receipt of such obligation is recogized in the case of the recipient corporation,

then no gain or loss with respect to the distribution of such obligation shall be recognized in the case of the distributing corporation. If the basis of the property of the liquidating corporation in the hands of the distributee is determined under section 334(b) (2) then the preceding sentence shall not apply to the extent that under paragraph (1) gain to the distributing corporation would be considered as gain to which section 341(f) or section 1245(a) or section 1250(a) applies.

* * * "

6. The Government alternatively contends that Section 1001(d) prohibits the use of Section 334(b) (2) to obtain a stepped-up basis. We do not find it necessary to decide that question and express no opinion as to its merits.

7. § *269* [as amended by Sec. 235(c) (2), Revenue Act of 1964, P.L. 88–

272, 78 Stat. 19]. *Acquisitions made to evade or avoid income tax.*

"(a) *In general.*—If—

(1) any person or persons acquire, or acquired on or after October 8, 1940, directly or indirectly, control of a corporation, or

(2) any corporation acquires, or acquired on or after October 8, 1940, directly or indirectly, property of another corporation, not controlled, directly or indirectly, immediately before such acquisition, by such acquiring corporation or its stockholders, the basis of which property, in the hands of the acquiring corporation, is determined by reference to the basis in the hands of the transferor corporation,

and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then the Secretary or his delegate may disallow such deduction, credit, or other allowance. For purposes of paragraphs (1) and (2), control means the ownership of stock possessing at least 50 percent of the total value of shares of all classes of stock of the corporation.

* * * "

income or excess profits liability. * * * *the section has not confined itself to a description of any particular method for carrying out such tax avoidance schemes but has included within its scope these devices in whatever form they appear* * * *."* [8]

(Emphasis added.)

■ The determining question then is whether the parties involved in the transactions here had as their principal purpose the avoidance or evasion of federal income tax. The principal purpose is that purpose which exceeds all others in importance.[9]

The determination by the Government that the principal purpose for effecting the transactions here was to obtain an "allowance" and thus avoid taxes is presumptively correct.[10]

"Theoretically the question of purpose is purely subjective; pragmatically, however, the trier of fact can only determine purpose from objective facts. Thus, *unless the tax payer can muster facts sufficiently plausible to convince the trier of the purity of his motives the IRS will prevail.*" (Emphasis added.) Bobsee Corp. v. United States, 411 F.2d 231, 238 (5th Cir. 1969).

Here, the father-son attorney-client relationships create circumstances which must invite close scrutiny even absent a presumption favoring the Government's determination. These circumstances and the lack of compelling evidence as to real business purposes for the transactions lead to a strong inference that the transactions were not *bona fide,* actual and genuine, but were mere sham transactions or at best transactions having as

their primary purpose the evasion of taxes.

■ We must conclude that plaintiff has not affirmatively established that the transactions had other than as their most important purpose tax avoidance. We do not find that the primary purpose in purchasing and liquidating CKS was the acquiring of its assets (including the $125,000 note made by son in favor of father) for investment or business purposes.

Nor do we think that the acquisition of ownership by Curry and Leigh was motivated primarily by a desire to secure a *bona fide* business interest in Supreme Investment Corporation. Supreme had as its primary assets and source of income a small leasehold which was subsequently allowed to expire. The Star Motel note was subsequently sold to Kellogg Realty, another of R. D. Kellogg's ventures, without cash consideration, being offset by a liability with Kellogg Realty.

The cases relied upon by plaintiff do not require a different result.[11] In each of those cases, the critical question was whether the transactions had as their primary purpose the avoidance of taxes. Here we find that the primary motivation was to avoid taxes. Unlike *Cherry,* upon which plaintiff places great emphasis, we do not find an "affirmative uncontradicted record."[12] On the contrary, the facts here, especially the relationships between the parties and the corporations, and the structure of the corporations, create a clear case of a tax avoidance purpose. Plaintiff has not demonstrated "the purity of [its] motives" as relating to business purpose rather than tax avoidance. We cannot

---

8. S.Rep.No. 627, 78th Cong., 1st Sess. p. 58 (1944 Cum.Bull. 973, 1069).

9. Green Light Co. v. United States, 405 F.2d 1068, 1070 (5th Cir. 1968).

10. *See, e. g.,* Welch v. Helvering, 290 U.S. 111, 115, 54 S.Ct. 8, 78 L.Ed. 212 (1933).

11. *See* Blueberry Land Co. v. Commissioner of *Internal Revenue,* 361 F.2d 93 (5th Cir. 1966); Bijou Park Properties, Inc., 47 T.C. 207 (1966); Cherry v. United States, 264 F.Supp. 969 (S.D. Cal.,1967).

12. Cherry v. United States, *supra,* 264 F. Supp. at 976.

accept the mere form of the transactions when their substance appears otherwise.[13]

By this ruling we do not imply any lack of personal or business integrity upon any of the parties involved, but we must hold, under the circumstances involved, that plaintiff's prayer for relief must be denied.

A proper decree should be presented.

---

13. We need not and do not decide whether Supreme's corporate form should be disregarded for all purposes.