William T. MULDROW, Appellant,

v.

Virginia Warren DALY, Appellee.

James C. TOOMEY et al., Appellants,

v.

Virginia Warren DALY, Appellee.

SINCLAIR REFINING COMPANY,
Appellant,

v.

Virginia Warren DALY, Appellee.

Nos. 17759, 17875, 17879.

United States Court of Appeals
District of Columbia Circuit.

Argued Dec. 18, 1963.

Decided Feb. 6, 1964.

See also 117 U.S.App.D.C. ——, 329
F.2d 881.

Mr. H. Mason Welch, Washington, D. C., with whom Messrs. J. Harry Welch, J. Joseph Barse, Walter J. Murphy, Jr., and James A. Welch, Washington, D. C., were on the brief, for appellant in No. 17759.

Mr. Harry L. Ryan, Jr., Washington, D. C., for appellants in No. 17875.

Mr. John P. Arness, Washington, D. C., for appellant in No. 17879.

Mr. John L. Laskey, Washington, D. C., with whom Messrs. Thomas S. Jackson, Robert M. Gray, and Marvin J. Coles, Washington, D. C., were on the brief, for appellee.

Before DANAHER, BURGER and MC-GOWAN, Circuit Judges.

DANAHER, Circuit Judge.

The appellee sustained injuries when she fell into an allegedly unlighted and unguarded stairwell immediately adjacent to a public alley. At the close of her case, appellants without offering evidence argued on various grounds that they were entitled to judgment as a matter of law. The trial judge submitted the case to the jury which resolved the issues in favor of the appellee. The appellants then filed a joint motion under Rule 50(b), F.R.Civ.P. for judgment in accordance with their respective motions for directed verdicts or in the alternative for a new trial. It is now contended that the trial judge erred in denying their joint motion. Since Judge Pine's opinion [1] in substantial detail discusses the facts and the reasons for his ruling, we but briefly refer to the background.

On the evening of June 12, 1958, the appellee and her escort had attended a night baseball game. Thereafter about 10:30 P.M., to reach a parking place, the appellee, her escort and other pedestrians in single file walked in a southerly direction on the left-hand side of a public alley. Cars were parked on the right-hand side of the alley so that only a single lane remained for use by northbound vehicles. The pedestrians on account of the closeness of such approaching traffic "hugged" the left-hand side of the alley. The pedestrians could not know whether they were walking on the edge of privately owned premises or upon the alley surface. Where the boundary line lay between the premises and the alley was not known to Sinclair's real estate manager [2] or to Muldrow who was operating a gasoline station selling Sinclair's products. The Toomeys, who owned the premises, knew the line only as shown on a map.

Against that background the jury might additionally have found that other people ahead of the appellee were walking down the left side of the alley. The appellee, a foot or two ahead of her escort, reached a point where a vehicle had been parked on the *left-hand* side of the alley. That car obscured a stairwell leading to a basement in a building used in the gasoline station's business. With her way thus obstructed and facing the headlights of oncoming cars on her right, the appellee, unaware of the stairwell, walked two or three steps in the darkened narrow space between the parked car and the building, and suddenly fell into the unlighted and unguarded stairwell.

The building with the stairwell was owned by the Toomeys who some years earlier had leased the entire premises to Sinclair. There was then no railing or other safeguard around the stairwell. There were no lights on the building over the stairwell, and none in the alley. The existence of the stairwell and of the conditions as described were known to Sinclair before it signed the lease. The latter thereafter had sublet the premises

---

1. Daly v. Toomey, 212 F.Supp. 475 (D.D.C.1963).

2. He had been called as a witness by the appellee, as were Mr. Muldrow and Mr. Toomey.

to Muldrow who was also aware of the conditions surrounding the stairwell. At all times material and up to the time of the injury the stairwell had been allowed to remain in the same condition as when Sinclair first took possession. Across the alley on a lubrication structure was a light which except for the parked car might have cast some illumination upon the stairwell.

I

At the close of the appellee's case, each of the appellants contended that the appellee in proceeding as she did was contributorily negligent as a matter of law, and each sought a directed verdict on that ground, *inter alia*. We are satisfied that the issue was properly submitted to the jury. It is fundamental that the trial court in considering the motions for directed verdict was bound to view the evidence most favorably to the appellee. She was entitled to every legitimate inference reasonably to be deduced from that evidence. Thus considered and taking the evidence as a whole, the facts as the jury might have found them do not necessarily demonstrate a lack of prudent conduct on her part. Unless the trial judge could properly determine that no reasonable man could reach a verdict in favor of the appellee, he was bound to submit the question to the jury.[3] We find no error on this score.

II

Following denial of the respective motions for directed verdicts in favor of the appellants, the trial judge next explored with counsel the elements of negligence he intended to explain to the jury.[4] He had before him some 50 prayers for specific instructions. All appellants took the position that the appellee was a trespasser in stepping onto the privately owned premises.

Additionally, all appellants advanced varying grounds for exculpation from liability. Illustratively, Sinclair contended it owed no duty to the appellee, and argued that Sinclair had been sued "only in its capacity as intermediate lessee-lessor and not by reason of any action having to do with the active operation of the service station." Sinclair submitted specific requests for instructions designed to permit the jury to exclude it from liability. Muldrow claimed he was not bound to light the public alley or adjacent areas, and that whatever duty he might have owed the appellee had been discharged when he placed lighting fixtures on the building across the alley from the stairwell. Moreover he pleaded that the Toomeys had created and were responsible for the hazards and dangerous conditions complained of. The Toomeys contended in effect, that having delivered possession of the entire premises to Sinclair pursuant to a lease, under its terms any duty owed to the trespassing appellee devolved upon Sinclair or upon Muldrow whom Sinclair by its sub-lease had placed in sole control of the premises and of the operation of the gas station.

The judge canvassed with counsel all such claims and the matter of applicability of various prayers to one or more of the appellants. Thereafter, the record discloses, he had worked out and delivered a careful charge adapted to the issues as framed by the parties. We excerpt a pertinent portion:

"Where property is adjacent to a public highway, as is the case before you, and the occupant of the property maintains an excavation thereon, and also maintains a situation or condition where a reasonably prudent man might mistake the point where the highway ended and the private property began, the occupant

---

3. Shewmaker v. Capital Transit Co., 79 U.S.App.D.C. 102, 143 F.2d 142 (1944).

4. Each appellant had filed cross claims seeking indemnity or contribution from the other two co-defendants. Such issues, by stipulation, were to be decided by the judge. He concluded that each was equally answerable with the others for the damages awarded to the appellee. See our opinion in No. 17736—Sinclair Refining Company v. Toomey, et al., 117 U.S.App.D.C. ——, 329 F.2d 881 (decided February 6, 1964).

of the property has a duty to take reasonable precautions to protect persons against falling into the excavation. In other words, if the occupant might reasonably have anticipated, as an ordinarily prudent person, that a reasonably prudent pedestrian, owing to the appearance of the place or the situation, might stray away from the highway in the belief that he was still on it and fall into the excavation, the occupant must take reasonable precautions to protect him against such a contingency.

"I have used the word 'occupant' in explaining this principle of law. But when this condition of the property has remained unchanged and was the same at the time of the accident as it was at the beginning of the term of the lease, and there is no dispute in this case from the evidence on this point, this principle of law, and the duty imposed thereunder, applies to the owner and intermediary lessor as well as to the occupant or tenant, provided you find that the property comes within the description I have just given you * * *."

Our study has led to the conclusion that the trial judge properly appraised the issues, despite contentions to the contrary. He left to the jury the determination as to whether these appellants might be treated as joint tort-feasors. Either this appellee was to be denied relief because of contributory negligence which the judge carefully defined, or the appellants might be found culpable because each in turn had either created or continued the maintenance of the dangerous condition complained of. As the elements of the appellee's claim against each of the appellants were outlined to the jury following the instruction we have quoted, we are satisfied that in the state of the evidence the charge as a whole correctly reflected the law.[5]

### III

■ Appellant Muldrow separately complains of the failure of the trial judge to order a new trial after he had determined that a verdict for $17,000 was excessive. Instead of granting a new trial outright, he entered a conditional order that a new trial would be granted unless the appellee should agree to a *remittitur* in the amount of $5,000. It is argued that the action of the court in effect deprived the appellants of their right to a trial by a properly functioning jury because of the substitution of the court's own "notion" of what the jury properly should have awarded. In Neese v. Southern Railway Co., 350 U.S. 77, 76 S.Ct. 131, 100 L.Ed. 60 (1955), the Supreme Court considered such a question [6] and reversed a court of appeals which had decided that a district judge in imposing a *remittitur* as a condition for a new trial had abused his discretion. The Court unanimously decided that the court of appeals was not justified in reversing where the action of the trial court was not without support in the record.[7] The evidence of record here clearly provides support for the ruling by the district judge.

5. Restatement, Torts § 367 (1934) which reads:
    "A possessor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway, is subject to liability for bodily harm caused to them while using such part as a highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel."
    And see Daly v. Toomey, *supra*, note 1; cf. Daisey v. Colonial Parking, Inc., 118 U.S.App.D.C. ——, 331 F.2d 777 (1963).

6. And see Dimick v. Schiedt, 293 U.S. 474, 486, 487, 55 S.Ct. 296, 79 L.Ed. 603 (1935).

7. We applied the principle of the Neese case in Hulett v. Brinson, 97 U.S.App. D.C. 139, 143, 229 F.2d 22, 26 (1955), cert. denied, 350 U.S. 1014, 76 S.Ct. 659, 100 L.Ed. 874 (1956). See generally, James, Remedies for Excessiveness or Inadequacy of Verdicts, 1 Duquesne L.Rev. 143 (1963).

## IV

■ Irrespective of points previously discussed, the appellants contend that in any event the trial judge should have granted a new trial because of certain other developments. For example, after the jury on each of two days had deliberated a total of eight hours, the judge sent for the jury and administered the "Allen charge." [8] The instruction as given has received the approval of this court on various occasions,[9] and in the circumstances here shown its delivery was well within proper bounds.

■■ Shortly thereafter the jury announced its agreement upon a verdict. As the clerk inquired as to the jury's findings, it developed that the jury intended to hold liable only the corporate appellant Sinclair. Without permitting the jury to make further report as to damages, the judge interrupted to say that the jury "apparently" had "misunderstood" instructions and excused the jury.

Then, in colloquy with counsel, the judge pointed out the contemplated verdict was inconsistent with his instructions. Sinclair alone could not be liable. In the judge's view of the law of the case, all three appellants could be liable under the circumstances which earlier had been explained if the injury were to be attributed by the jury to the creation and continued maintenance of the stairwell. Muldrow alone *might* be liable if the jury were to find that his failure to maintain adequate lighting was the proximate cause of the harm. All appellants protested. The appellee argued that in any event the verdict against Sinclair should be received. Having heard counsel, the judge recalled the jury and explained the respects in which he deemed his instructions had been misunderstood.

Deeming critical this phase of the case, we have carefully reviewed the claims of all counsel and considered the problem in the aspect then confronting the trier. We are satisfied that even if viewed as an exercise of discretion,[10] the judge in the circumstances was bound to act as he did.

From further colloquy which ensued, it is clear that Muldrow's counsel had in mind that the jury should be discharged or that the verdict be received with corrective action thereafter to follow. Undoubtedly he anticipated that the judge would be bound to set aside the improper verdict.[11] Sinclair's attorney submitted that the jury should be sent back for further deliberations or that a mistrial be declared that the proceedings might begin again. We are satisfied that the judge acted in the interest of sound judicial administration as well as in the interests of the litigants. He realized, of course, that the jury must take its law from the judge. As the Supreme Court has pointed-ed out:

> "In a trial by jury in a federal court, the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law. This discharge of

---

8. Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896); Lias v. United States, 51 F.2d 215, 218 (4 Cir.), aff'd, 284 U.S. 584, 52 S.Ct. 128, 76 L.Ed. 505 (1931).

9. Hoagland v. Chestnut Farms Dairy, 63 App.D.C. 357, 72 F.2d 729 (1934); Capital Transit Co. v. Howard, 90 U.S.App. D.C. 359, 196 F.2d 593 (1952); and see Orthopedic Equipment Co. v. Eutsler, 276 F.2d 455, 462, 463, 79 A.L.R.2d 390 (4 Cir. 1960); John Fabick Tractor Company v. Lizza & Sons, Inc., 298 F.2d 63 (2 Cir. 1962).

10. Defined variously in many cases, the term is meaningful, and well put by Mr. Justice Sutherland in Langnes v. Green, 282 U.S. 531, 541, 51 S.Ct. 243, 75 L.Ed. 520 (1931):
    "When invoked as a guide to judicial action it means a sound discretion, that is to say, a discretion exercised not arbitrarily or wilfully, but with regard to what is right and equitable under the circumstances and the law, and directed by the reason and conscience of the judge to a just result."

11. See Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350 (4 Cir. 1941).

the judicial function as at common law is an essential factor in the process for which the Federal Constitution provides. As was said by Mr. Justice Story * * * 'It is the duty of the Court to instruct the jury as to the law; and *it is the duty of the jury to follow the law,* as it is laid down by the Court.' " [12] (Emphasis added.)

The harm complained of had occurred on June 12, 1958. The trial which commenced November 26, 1962, had already run until December 4, 1962. On both sides the case had been capably and fully tried by experienced counsel who knew precisely what points each sought to establish. The judge was bound to determine what rules of substantive law were to govern and to instruct the jury as to how those rules were to be applied. He had already fully explained that the appellee could not recover if the jury should find her contributorily negligent. The jury's announced intention to find in her favor resolved that issue. The judge had previously instructed as to the elements of legal liability within the purview of the law applicable to each of the appellants. Yet the jury intended to hold only the corporate appellant and under the law of the case that appellant could not properly be found solely responsible.

Such considerations prompted the ruling which derived not from error of fact by the jury but from its failure to apply the law as pronounced by the judge.[13] About noon the next day the jury reported as previously that it found in favor of the appellee. This time, agreeably to the judge's original as well as his further instructions, the verdict ran against all appellants. The jury was polled. The verdict then was received and recorded since it was consonant with recognized legal principles, previously discussed, *supra.* We perceive no error in the action of the trial judge.

We have considered other contentions [14] urged upon us, but we find no ruling which requires further treatment.

Affirmed.

12. Herron v. Southern Pacific Co., 283 U.S. 91, 95, 51 S.Ct. 383, 75 L.Ed. 857 (1931).

13. Cf. Frye v. Lyon, 55 App.D.C. 48, 299 F. 926 (1924); Stetson v. Stindt, 279 F. 209, 212 (3 Cir. 1922); Fairmount Glass Works v. Coal Co., 287 U.S. 474, 484, 485, 53 S.Ct. 24, 77 L.Ed. 511 (1933); and see James, Functions of Judge and Jury in Negligence Cases, 58 Yale L.J. 667 (1949).

14. For example, although conceding that the owner of the parked car was a stranger, counsel for the Toomeys nevertheless argued that a traffic regulation which forbids parking in an alley "has some materiality." The judge ruled otherwise since the unknown car-owner had not been made a party in Toomeys' crossclaim. Cf. 28 U.S.C. § 2111 (1958).