Emmett E. WELLS, Appellant,

v.

The WARREN COMPANY, Inc., Appellee.

No. 19873.

United States Court of Appeals
Fifth Circuit.

March 4, 1964.

Frank J. Muscarella, Jr., Clearwater, Fla., for appellant.

Thomas A. Clark, Tampa, Fla., for appellee.

Before TUTTLE, Chief Judge, and JONES and GEWIN, Circuit Judges.

GEWIN, Circuit Judge.

The appellant Wells, plaintiff below, was employed by Winn-Dixie Stores, a foodstore chain in Florida, as a maintenance carpenter at the time of the event which resulted in this suit. He had been so employed for a period of 6 years. On September 30, 1960, Wells' supervisor, the maintenance foreman for Winn-Dixie, instructed Wells and 2 other Winn-Dixie employees to go to one of the stores in Tampa to assist in unloading some refrigeration equipment. The equipment in question had been purchased from the appellee, The Warren Company, and the only documentary evidence with respect to its purchase and delivery is a simple purchase order form from Winn-Dixie addressed to Warren in Atlanta, and an invoice from Warren in Atlanta.[1] Warren transported the equipment to the Winn-Dixie store on a large, flatbed truck owned by it and operated by truck drivers in the employ of Warren.

When Wells and the 2 other Winn-Dixie employees arrived at the store, the truck had not been unloaded. The Warren truck was equipped with 2 skids made of wood. The skids were 4 x 6 inches and were 14 to 16 feet long. These skids were used in unloading the crates of refrigeration equipment. The skids had metal hooks at one end with which to hook them to the bed of the truck for the purpose of holding them secure as the crates were being unloaded. Warren owned the truck and the skids, and had 2 employees on the scene when Wells and the 2 Winn-Dixie employees arrived. These 5 men, Wells and 2 others from Winn-Dixie, and the 2 Warren employees, proceeded to unload the equipment. The equipment was moved to the rear of the truck. Wells and the 2 employees from Winn-Dixie were on the ground and sought to balance each crate as it was descending down the skids. Warren's 2 employees were on the truck and walked down the skids

pushing the crates as they proceeded downward. Two crates of the cargo were unloaded in this fashion without incident.

As the third crate was being unloaded, the skid on the side where Wells was working began to sag. The crate cut into the skid and stopped sliding. This third crate contained that portion of a "walk-in cooler" to which the door is attached. When the crate began to tilt, the door came open and swung to the side of the tilting or sagging skid, throwing extra weight to that side and increasing the sag or tilt of the skid. The other Winn-Dixie employee who was on the same side as the plaintiff Wells, released his hold of the crate, stepped away, and admonished Wells to do the same; but before Wells moved, the crate toppled off the skids, and he was pinned to the ground. Severe injuries resulted. Approximately 15 men were required to remove the crate from Wells' body.

At the trial, an expert testified on behalf of Wells that a proper use of the skids in unloading such heavy equipment would require placing blocks or other supports under the skids to prevent sagging. No supports were used here. This same expert witness testified that there was a general custom in the industry to secure the doors of such equipment by the use of bolts to prevent the door from swinging open as it did here. The door in this case was not so secured. The plaintiff introduced into evidence the purchase order from Winn-Dixie and the invoice above mentioned, which listed all of the equipment and the charges therefor. Following the total of all charges for the equipment there is the statement "plus delivery—$225.00," which added to the cost of the equipment resulted in the final total of charges for equipment and delivery. The documents contained nothing else pertinent to the case.

When Wells rested his case, Warren moved for a directed verdict on the fol-

1. The witnesses spoke of a bill of lading, consignee, and freight lines, but no bill of lading appears in the record; Winn-Dixie was a purchaser and not a consignee; and the hauling was done on a Warren truck—not by a common carrier.

lowing grounds: (1) that the plaintiff had failed to prove any actionable negligence on the part of Warren or its servants; and (2) the plaintiff was guilty of contributory negligence. The court granted the motion, assigning the following reasons therefor:

"* * * But I think we are faced with a situation where *if it is a joint operation,* then if the truck drivers involved in this unloading are guilty of negligence, the *foreman of the crew in charge,* who had his hands on the material when it was done, certainly is no less responsible. I cannot see any other way, and I feel that it is my duty to grant the motion. That is what I am going to do." (emphasis added)

One of Winn-Dixie's foremen testified that there was no agreement between Winn-Dixie and Warren as to who was to unload the equipment. This witness testified that there "* * * was the custom and practice with regard to Winn-Dixie men and the Warren Company man. * * *" according to which Winn-Dixie employees helped the Warren truck drivers unload refrigeration equipment.[2]

We have carefully examined the entire record and find no evidence whatever that Wells was the "foreman of the crew in charge." There may be some slight evidence that Wells was in charge of the 2 Winn-Dixie employees, but such evidence is doubtful, equivocal and uncertain. There is not a scintilla of evidence that the 2 Warren employees were under the supervision of Wells or that they considered themselves to be under his supervision.

 The law with respect to directed verdicts is well-settled. The Court should not grant a motion for a directed verdict if there is substantial credible evidence which would support a verdict in favor of the party against whom the motion is made. It is the function of the jury, not the court, to weigh and evaluate the evidence on both sides of a contested question. If there is a conflict in the evidence, the jury must resolve such conflict. If legitimate, contrary inferences may be drawn from the evidence, the choice of the proper deduction is also for the jury. A mere scintilla of evidence is not sufficient. There must be a conflict in substantial evidence. Substantial evidence is evidence of such quality, char-

---

2. The record is rather confused, but it does contain the following evidence with respect to the responsibility of unloading refrigeration equipment delivered to Winn-Dixie by Warren:

"Q. Mr. Wells, I want to ask you one question, sir. Was there a contract between the Warren Company and Winn-Dixie relative to the manner and the duty imposed upon the Winn-Dixie Company to unload this freight?

"A. Now, are you talking to me or Mr. Wells? You said Mr. Wells.

"Q. I meant you, Mr. Sapp.

"A. Okay.—No, sir, there has never been any agreement who unloads them."

* * * * *

"BY MR. CLARK:

"Q. Mr. Sapp, you said that there was no agreement?

"A. That's right.

"Q. However, was there any customary way that this unloading was done?"

* * * * *

"Q. Mr. Sapp, maybe I had better ask the question over. Mr. Sapp, in connection with receiving a shipment of re-

frigeration parts from the Warren Company, what was the custom with respect to the unloading of a truck when it arrived at a Winn-Dixie store?"

* * * * *

"THE COURT: Was there any custom about unloading shipments with the Warren Company?

"THE WITNESS: Yes, sir.

"THE COURT: There was?

"THE WITNESS: Yes, sir."

* * * * *

"Q. All right, sir. Now, sir, based on that experience, what was the custom and practice with regard to Winn-Dixie men and the Warren Company man, relative to the unloading of a truck arriving with refrigeration equipment at one of your stores.

"A. Well, when I get a bill of lading, I just send a bunch of men. I know what day they are going to be there, and I would send a bunch of men there to go there and help take this stuff off.

"Q. And they participate in the unloading of the truck; is that correct?

"A. Yes, sir."

acter and weight as would justify a reasonable person in drawing the inference of fact that is sought to be sustained. If the state of the evidence is such that it presents no conflict, nevertheless, if reasonable minds may draw conflicting or contrary inferences from the same evidence requiring different verdicts, it is for the jury to determine which is the correct inference. For the purpose of this opinion, we must accept as true the credible evidence adduced by the plaintiff Wells. Murray v. Pasotex Pipeline Co., 5 Cir. 1947, 161 F.2d 5; Baltimore & O. R. Co. v. Postom, 1949, 85 U.S.App. D.C. 207, 177 F.2d 53; Atlantic Greyhound Corp. v. Crowder, 5 Cir. 1949, 177 F.2d 633; Audirsch, et al. v. Texas & Pac. Ry. Co., 5 Cir. 1952, 195 F.2d 629; Swift & Co. v. Morgan & Sturdivant, 5 Cir. 1954, 214 F.2d 115, 49 A.L.R.2d 924; Texas Co. v. Savoie, 5 Cir. 1957, 240 F.2d 674. Such rules are not in conflict with the law of Florida. Southern Express Co. v. Williamson, 1913, 66 Fla. 286, 63 So. 433, L.R.A.1916C, 1208.

In undertaking to analyze the action of the court in granting the motion for a directed verdict, it is difficult to pinpoint the exact reasoning followed. The ruling contained the language " * * if it is a joint operation * * * ;" and referred to " * * * the foreman of the crew in charge." The court did not conclude that the Warren employees were guilty of negligence, but did conclude that if they were, the plaintiff Wells was " * * * certainly no less responsible." It seems clear to us that there was substantial, credible evidence, viewing the record as it was when the motion was granted, upon which a jury could properly infer the existence of negligence on the part of the Warren employees and the Warren Company, proximately causing the injuries involved. Warren furnished the 2 helpers who were pushing the crates down the skids; it furnished the skids which were designed to be used in unloading the equipment at hand; there was evidence that it was the duty of such employees of Warren at least to participate in unloading the equipment;

and according to the testimony of witness Chapman, the door to the equipment was not properly secured.

If the court's reference to "a joint operation" be considered a ruling to the effect that the plaintiff could not recover because of a joint enterprise, we disagree. A succinct statement of the law, supported by the text writers and cases, is contained in Restatement of the Law of Torts, § 591, Comment a, p. 1274:

" * * * If the plaintiff is injured by the negligence of a defendant with whom he is engaged in a joint enterprise, the fact that they are so engaged does not bar his recovery."

See also Rollinson v. Hicks, 1951, 233 N. C. 99, 63 S.E.2d 190, 195; 38 Am.Jur., § 238, p. 925. Florida also recognizes such to be the rule. Arline, et al. v. Brown, 5 Cir. 1951, 190 F.2d 180.

The judgment is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

Reversed and remanded.