**Delmar R. AYLOR et al., Appellants,**

v.

**INTERCOUNTY CONSTRUCTION CORPORATION et al., Appellees.**

**No. 20265.**

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 16, 1967.

Decided June 20, 1967.

Petition for Rehearing En Banc and for Rehearing before the Division Denied Sept. 6, 1967.

Mr. Albert D. Brault, Washington, D. C., for appellants.

Mr. Cornelius H. Doherty, Washington, D. C., for appellees.

Before FAHY,* TAMM and ROBINSON, Circuit Judges.

PER CURIAM:

■ Delmar R. Aylor and his wife, the appellants, sued in the District Court for injuries Aylor sustained in an accident allegedly caused by the concurring negligence of Clifton Ross, an employee of Intercounty Construction Corporation, and one Leon A. Tinsley.[1] The action was tried to a jury and at the conclusion

---

* Circuit Judge Fahy became Senior Circuit Judge April 13, 1967.

1. Since service of process on Tinsley could not be obtained, the case proceeded against Intercounty and Ross. This appeal is from the second of two trials, the jury in the first having failed to agree.

of appellants' case in chief, a verdict for Intercounty and Ross, the appellees, was directed on their motion, the District Judge expressing the opinion that the evidence could not support a finding that appellees were negligent or that any negligence on their part was proximately related to the accident. This disposition we test, as we must, upon the view of the evidence most favorable to appellants.[2]

The accident occurred on North Capitol Street, a north-south roadway, at its intersection with Bryant Street. At the time, a portion of North Capitol north of Bryant was undergoing reconstruction into a multi-lane thoroughfare, the eastern half of which was unfinished. The western side had been completed and, with a dividing line painted on the surface to create two lanes, was accommodating both northbound and southbound traffic. South of Bryant, North Capitol remained a narrower street. Vehicles northbound on North Capitol thus had to veer to the left at Bryant in order to gain access to the northbound lane on the western portion of the newly constructed roadway.

Aylor was a construction inspector for the District of Columbia Department of Highways and Traffic, and Intercounty was a subcontractor on the project. Shortly before the accident, an Intercounty inspector instructed Ross to relocate an air compressor, which was mounted on wheels and attached by a steel tongue to the rear of a truck. This order, with the exigencies of the construction, required Ross to tow the compressor southwardly on North Capitol, negotiate several turns, and follow the

North Capitol northbound traffic pattern beyond Bryant to his destination.

As Ross proceeded to the south, Aylor and another construction inspector unsuccessfully endeavored to stop him upon observation that the compressor was acting erratically. Aylor signaled again when Ross returned in the northbound lane. This time Ross stopped, not at the spot indicated by Aylor, where the rig would have been out of the line of traffic, but in the North Capitol-Bryant intersection, partially blocking the northbound lane of North Capitol. As a consequence, vehicles proceeding northwardly on North Capitol were forced to travel around the left side of the truck and compressor.

Aylor told Ross that the compressor was coming loose and that he thought that Ross should attach a safety chain. Ross got out of the truck, and Aylor pointed out what he had observed. The tongue had partially broken in the middle, with but a thin lip of metal preserving the connection. The weakness permitted the compressor to move back and forth against the truck as its speed varied, and this action in turn was causing the tongue to buckle.

Ross felt that he could continue since he had only a short distance to go, but Aylor repeated his suggestion that a chain—one was on the truck—should be used.[3] While efforts were being made to fasten the chain on,[4] a car driven northwardly by Tinsley collided with the rear of the compressor, knocking it against Aylor's leg and so injuring it as to necessitate eventual amputation.

In resolving the issue confronting us, we turn to the District Judge's analysis

2. Muldrow v. Daly, 117 U.S.App.D.C. 318, 320, 329 F.2d 886, 888 (1964); Rodenbur v. Kaufmann, 115 U.S.App.D.C. 360, 364, 320 F.2d 679, 683 (1963); Machanic v. Storey, 115 U.S.App.D.C. 87, 90, 317 F.2d 151, 154 (1963); Kendall v. Gore Properties, Inc., 98 U.S.App.D.C. 378, 384 n. 3, 236 F.2d 673, 679 n. 3 (1956); Higashi v. Shifflett, 90 U.S.App.D.C. 302, 195 F.2d 784 (1952); Jackson v. Capital Transit Co., 69 App.D.C. 147, 148, 99 F. 2d 380, 381, cert. denied, 306 U.S. 630, 59 S.Ct. 464, 83 L.Ed. 1032 (1938).

3. Aylor testified that "I told him that I thought he should put a safety chain on it if he had one." As recounted by Ross, Aylor's words were: "We'll put this chain on here before it breaks loose."

4. Here again the evidence conflicts on the nature of Aylor's activities. According to Ross, Aylor made efforts to find connections for the chain, bending down between the vehicles and actually assisting the process. Aylor disavowed all such involvement and denied that he attempted to direct the proceedings.

of the evidence made prefatorily to direction of the verdict. He felt that Ross, "bowing to the authority of the plaintiff," had stopped the truck on Aylor's second signal; that Aylor, after calling Ross' attention to the defective tongue, had "suggested that right there, without moving anywhere else, steps be taken to fasten the compressor to the truck more securely"; and that Aylor had "started to assist him in accomplishing the desired result" and while doing so suffered his injuries... "Under these circumstances," he said, "the Court is unable to conclude that there is any basis upon which the jury would be justified in finding the defendants before the Court either guilty of negligence or that their negligence was the proximate cause of the accident."

■ While we recognize the reasonableness of this assessment of the evidence, the fact is that it was susceptible of yet another interpretation that legitimately could have appealed to the jury. Our reading leaves us unclear as to the precise limits of Aylor's authority and responsibilities over the movements of the compressor or just what thoughts Ross entertained on that subject.[5] This

aside, Aylor testified that he tried to stop the truck and compressor in an area which would have left traffic unimpeded, but that Ross continued somewhat beyond that point; and as the trial judge recognized, there was ample proof for a determination that the rig was illegally parked, exposing those in its immediate vicinity to a foreseeable peril of bodily injury emanating from moving traffic.[6] The jury might have found that Ross picked his parking spot independently of any direction Aylor gave,[7] or that in any event had Ross followed Aylor's signal more closely, no hazard from vehicles on North Capitol would have been created.

■ While, after Ross stopped, Aylor called Ross' attention to the defective tongue and counseled the installation of a safety chain, the evidence did not compel a finding that he ordered Ross to discontinue his journey until this was done. Moreover, while Aylor was nearby during the attachment of the chain, there remained the question whether he supervised or engaged in the operation. Indeed, Aylor testified that he did not command the use of a chain and did not assist Ross in his efforts to connect it.[8] A

---

5. Aylor's job was to ascertain whether contractors' performances measured up to specifications. He testified, however, that "stopping" Ross "and telling him what I had observed * * * is part of our duties." Beyond this, we are left in the dark.

6. Negligence may be established by evidence of violation of a regulation designed to protect the public from personal injury through a prohibition against obstruction of the normal flow of traffic. D. C. Transit System, Inc. v. Slingland, 105 U.S.App.D.C. 264, 267, 266 F.2d 465, 468, 72 A.L.R.2d 1290, cert. denied 361 U.S. 819, 80 S.Ct. 62, 4 L.Ed.2d 64 (1959); Eberhart v. Abshire, 158 F.2d 24 (7th Cir. 1946). Cf. Peigh v. Baltimore & O. R. Co., 92 U.S.App.D.C. 198, 204 F.2d 391. 44 A.L.R.2d 671 (1953). The evidence here sufficed to warrant a finding that regulations of that character were breached. See D.C. Traffic and Motor Vehicle Regulations, pt. 1, §§ 76, 79, 80(h), 154 (1957). And if the violation, by generating a danger which the regulation was designed to suppress, pro-

duces the mischief the regulation was meant to avert, it is a legal cause thereof. Ross v. Hartman, 78 U.S.App.D.C. 217, 218, 139 F.2d 14, 15, 158 A.L.R. 1370 (1943), cert. denied 321 U.S. 790, 64 S.Ct. 790, 88 L.Ed. 1080 (1944).

7. Additionally to stopping at a location other than the one Aylor indicated, Ross said that he was aware of the first signal, which was given when he was traveling southwardly.

8. On these topics Aylor testified:
A. * * * And I told him that I thought he should put a safety chain on it if he had one. * * *
*       *       *       *       *
A. * * * I stated that he should put a chain on it, that I thought he . should.
*       *       *       *       *
Q. Then after you said put the chain on, you told him to put the chain on, is that right?
A. I didn't tell him to put it on. I said that I would if I were he.
*       *       *       *       *

jury might have disregarded Aylor's version, but it might also have said that Aylor's participation extended no further than advice, and that the decisions and the activities were Ross' own. And the jury might also have concluded that, the potential danger to others considered, Aylor's action in accepting such risk of personal injury as he should have recognized was neither uncompelled nor unreasonable.[9]

The direction of verdict for appellees cannot survive an application of settled principles. "Only where the probative facts are undisputed and where reasonable minds can draw but one inference from them does the question become one of law for the court. * * * Where, as here, the case turns on controverted facts and the credibility of witnesses, the case is peculiarly one for the jury."[10] The trial court ruling on a motion for directed verdict "must assume that the jury may resolve the conflict against the moving party, and from the facts as found draw the inference most favorable to his opponent."[11] And both the conflict and the possibility of its solution in the opponent's favor may arise from "evidence of such quality and weight as would be sufficient to justify a reasonable man in drawing the inference of fact that is sought to be sustained."[12] In our view, the state of the evidence when appellants rested was such that Ross' primary negligence, its relationship to Aylor's injuries, and Aylor's contributory negligence were issues that should have been submitted to the jury. Since they were not, we must reverse for a new trial.

We deem it appropriate also to comment, for the future guidance of the trial court and the parties, upon another aspect of the case. We are told[13] that Aylor, on direct examination, stated that for lack of funds after he was injured, he had to dispense with the services of his maid. Defense counsel was thereafter permitted to develop on cross-examination that Aylor had accepted payments under the Federal Employees' Compensation Act. Evidence of the receipt of collateral benefits is inadmissible on the issue of damages for personal

---

Q. Never got down in any way to help him to put the chain around the compressor and onto the truck?
A. Never helped him at all.
Q. Never touched it in any way?

A. No, sir.

*    *    *    *    *

Q. Didn't you stay right there and help him during that period of time?
A. I didn't help Mr. Ross at all.
See also *supra* notes 3 and 4.

9. One who endeavors to safeguard others against a threat of injury posed by a defendant's negligence does not voluntarily assume the incidental risks where the alternative is to suffer a continuation of the danger. Perpich v. Leetonia Mining Co., 118 Minn. 508, 137 N.W. 12 (1912); Bond v. Baltimore & O. R. Co., 82 W.Va. 557, 96 S.E. 932, 5 A.L.R. 201 (1918); Restatement (Second) of Torts § 496E (2) (a) (1965). See also Dougherty v. Charles H. Tompkins Co., 99 U.S.App. D.C. 348, 240 F.2d 34 (1957). Nor is he guilty of contributory negligence un-less under the circumstances the effort was unreasonable. Cote v. Palmer, 127 Conn. 321, 16 A.2d 595 (1940); Wagner v. International R. Co., 232 N.Y. 176, 133 N.E. 437, 19 A.L.R. 1 (1921); Restatement (Second) of Torts § 472 (1965).

10. Capital Transit Co. v. Bingman, 94 U.S. App.D.C. 75, 76, 212 F.2d 241, 242 (1954). See also cases cited *supra* note 2. *Cf.* Mosheuvel v. District of Columbia, 191 U.S. 247, 265–266, 24 S.Ct. 57, 48 L.Ed. 170 (1903).

11. Baltimore & O. R. Co. v. Postom, 85 U.S.App.D.C. 207, 209, 177 F.2d 53, 55 (1949). See also Riss & Co. v. Association of American Railroads, 187 F.Supp. 306, 312 (D.D.C.1960).

12. Baltimore & O. R. Co. v. Postom, *supra* note 11, 85 U.S.App.D.C. at 208, 177 F. 2d at 54. See also Wells v. Warren Co., 328 F.2d 666, 668–669 (5th Cir. 1964).

13. See *infra* note 16 and accompanying text.

injury [14] and, we think it equally plain, for purposes of contradicting a party's testimony.[15] The trial judge recognized these principles but permitted the inquiry as a palliative for Aylor's earlier reference to the maid, which he termed an appeal to the sympathy of the jury. We are not able to gauge the propriety of the reference because this portion of Aylor's testimony was not included in the record on appeal.[16] Assuming, however, the correctness of the characterization the judge gave it, orthodox treatment would have involved exclusion or eradication of the remark rather than the introduction of inadmissible evidence to combat it.

Reversed and remanded.

TAMM, Circuit Judge (dissenting):

I am of the view that the trial judge was correct in directing a verdict for appellees at the conclusion of the appellants' case. An appraisal of the evidence offered by the plaintiffs-appellants is to me convincing that there was not sufficient evidence on the part of the appellants to permit the case to be submitted to the jury. This appraisal, moreover, establishes to my satisfaction as a matter of law that there was no evidence whatever to show that the conduct of these appellees was a proximate cause of the unfortunate injuries to the male appellant. In addition to these factors, I feel that the evidence presented clearly established a defense of assumption of risk in favor of the appellees. I would affirm.

---

14. Eichel v. New York Cent. R. Co., 375 U.S. 253, 254, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963); Bryant v. Mathis, 107 U.S. App.D.C. 339, 340, 278 F.2d 19, 20 (1960); Capital Products, Inc. v. Romer, 102 U.S.App.D.C. 279, 252 F.2d 843 (1958); Geffen v. Winer, 100 U.S.App. D.C. 286, 244 F.2d 375 (1957); Hudson v. Lazarus, 95 U.S.App.D.C. 16, 18–20, 217 F.2d 344, 346–347 (1954).

15. Eichel v. New York Cent. R. Co., *supra* note 14, 375 U.S. at 254–256, 84 S. Ct. 316; Caughman v. Washington Terminal Co., 120 U.S.App.D.C. 217, 345 F. 2d 434 (1965). See also Tipton v. Socony Mobil Oil Co., 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963).

16. To reduce appellants' costs, only the evidence bearing on liability was transcribed.