**LIBERTY MUTUAL INSURANCE COMPANY and Monsanto Chemical Company, Appellants,**

v.

**Mrs. Winnie Ruth Brown FALGOUST et al., Appellees.**

**No. 23268.**

United States Court of Appeals
Fifth Circuit.

Nov. 17, 1967.

John V. Baus, of Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, La., Ignatz G. Kiefer, New Orleans, La., for appellants.

Calvin H. McBride, James D. McGovern, Jr., New Orleans, La., Chester Francipane, Metairie, La., for Harold J. Reiss.

Thomas J. Wyllie, of Adams & Reese, New Orleans, La., for B. & G. Crane Service, Inc. and Aetna Casualty & Surety Co.

Monroe & Lemann, Melvin I. Schwartzman, Andrew P. Carter, Eugene G. Taggart, W. Malcolm Stevenson, New Orleans, La., for appellee, Louisiana Power & Light Co.

Price & Francipane, Metairie, La., for appellee, Harnischfeger Corporation.

Pascal F. Calogero, Jr., of Landrieu, Calogero & Kronlage, New Orleans, La., for appellees, Mrs. Winnie Ruth Brown Faigoust and Mary Lynn Falgoust, and Employers' Liability Assurance Corporation (Intervenor).

Gerald P. Fedoroff, New Orleans, La., for John Dibert Falgoust.

Before RIVES, GOLDBERG and AINSWORTH, Circuit Judges.

AINSWORTH, Circuit Judge:

In these Louisiana diversity damage suits growing out of the death of one worker and injury to another, the attack of appellants is against the failure of the trial judge to grant their motion for a directed verdict or judgment notwithstanding the verdict and, alternatively, against the denial of a new trial.

On July 13, 1961, Francis T. Falgoust was killed and Harold Reiss sustained physical injuries when the boom of a crane with which they were working came into contact with an overhead uninsulated 13,800-volt power line at Monsanto Chemical Company's plant at Luling, Louisiana.

Suits were filed by the widow of Francis T. Falgoust and his minor children, a seven-year-old daughter and a nineteen-year-old married son,[1] as a result of the death of Falgoust; also, by Harold Reiss for physical injuries; and were consolidated for trial. They charged negligence by a number of co-defendants.[2] The matter was submitted on written interrogatories to the jury which found that defendant Monsanto Chemical Company and its insurer Liberty Mutual Insurance Company were solely responsible for the accident[3] and that Falgoust and Reiss were not contributorily negli-

---

1. As provided by the survival of action provisions of La.Rev.Civil Code Art. 2315.

2. The named defendants were Monsanto Chemical Company and its insurer Liberty Mutual Insurance Company; B. & G. Crane Service, Inc. and its insurer Aetna Casualty and Surety Company; Louisiana Power & Light Company; and Harnischfeger Corporation, the crane's manufacturer.

3. The pertinent interrogatories and answers thereto of the jury are as follows:

"VERDICT

"1. Was the work being performed by Welding & Manufacturing a part of the regular trade, business, or occupation of Monsanto? Answer yes or no No

"2. Were Mr. Hortenstein the driver, and Mr. Scelson the operator, of the crane the borrowed servants of Welding and Manufacturing? Answer yes or no Yes

"3. Was Monsanto negligent? Answer yes or no Yes
If your answer to Question #3 is in the affirmative, state in what respect it was negligent.

Failure to provide less hazardous unloading area and safety supervisor.
If your answer to Question #3 is in the affirmative, answer Question #4:

"4. Was the negligence of Monsanto a proximate cause of the accident? Answer yes or no Yes

"5. Was Mr. Hortenstein or Mr. Scelson negligent? Answer yes or no No
* * * *

"7. Was B. & G. Crane Service negligent in furnishing the crane that it furnished? Answer yes or no No
* * * *

"9. Was Francis T. Falgoust negligent? Answer yes or no No
* * * *

"11. Was Harold J. Reiss negligent? Answer yes or no No"

gent.[4] Judgment was rendered accordingly.[5]

In their appeal Monsanto and its insurer Liberty Mutual present two issues for our consideration: first, that there was no reasonable evidence on which the jury could find that Monsanto was at fault in causing this accident and that Falgoust and Reiss were not contributorily negligent and/or assumed the risk; secondly, that the only evidence presented to the jury established that the work undertaken by Welding & Manufacturing Company, employer of Falgoust and Reiss, was part of the "trade, business or occupation" of Monsanto, requiring the conclusion that Falgoust and Reiss were statutory employees of Monsanto and that their rights and remedies were governed exclusively by the Louisiana Workmen's Compensation. La. R.S. 23:1032, 23:-1061.

The evidence shows that Monsanto, a manufacturer of agricultural chemicals, was expanding its manufacturing facilities at Luling by capital improvements which consisted of construction of additional plant facilities and the installation of several large cylindrical steel vessels. It was necessary that these vessels be unloaded from two railroad gondolas at a spur track at the plant, thence that they be transported to a jobsite on the plant grounds where they would be erected and structural steel buildings would be fabricated and erected to surround them. Monsanto contracted with Welding & Manufacturing Company to do this work. Welding in turn secured the services of a 35-ton truck-crane with operator and oiler-driver from B. & G. Crane Service, Inc., to lift the tanks off the rail cars to trailer trucks. Falgoust and Reiss were iron workers employed by Welding to work with the crane operator and driver supplied by B. & G. On the second day of work, one of the vessels had been lifted off the rail cars without incident, and the crane operator was preparing to remove another vessel when the boom, not having been fully lowered, came into contact with the high-voltage line resulting in the accident. All of the workers had been warned of the danger of the power line which was about 30 feet high above ground level, and it is clear that had the boom of the crane been fully lowered it could have passed safely under the wire. However, the evidence is in sharp conflict as to why the operator moved his crane into the line without lowering the boom, appellants claiming that the evidence shows that Falgoust signaled him to move into the line, appellees denying this and producing contradictory witnesses. In any event, the matter was clearly a question of fact for the jury's determination.

Monsanto directed its plant civil engineer, Senior Design Engineer Pearson, to be temporary coordinator on the job. He coordinated the work with the contractor, secured the location and worked closely with the contractor in the execution of his work. He spotted the two railroad gondolas carrying the vessels, one directly beneath the high-voltage line and the other just east of the power line, at a point requested by Welding. In doing so, it was planned that all of the unloading work would be done east of the high-voltage power line which crossed the spur track. The vessels would then be unloaded and moved via plant roads to the jobsite. However, it was later discovered that because there were low wires which obstructed movement of the vessels over the route originally planned, it was necessary to use an alternate route, thus re-

4. Under Louisiana law recovery is completely barred when contributory negligence is a proximate cause of an accident. See, for example, Gilliam v. Lumbermens Mutual Casualty Company, 240 La. 697, 124 So.2d 913 (1960).

5. The jury fixed the amount of damages for plaintiff Mrs. Falgoust in the sum of $51,000; for Mary Lynn Falgoust, minor daughter, in the sum of $17,500; and for Harold J. Reiss in the sum of $4,000. As to John Dibert Falgoust, the decedent's married son, the trial judge granted a new trial on damages only, and the matter having been submitted to him on the evidence offered at the original trial, he found for this claimant in the sum of $5,000.

quiring the crane to traverse a number of times under the high-voltage line. Pearson said that had he known the original plan was not feasible because the vessels could not be moved under these low wires, he would not have spotted the railroad cars at a point beneath the high-voltage line. However, he had not gone out and determined in advance whether the vessels could be moved over the originally planned route before spotting the cars. He conceded that if the rail cars had been spotted at a point on the spur track west of the high-power wire, the work could have been done without having to traverse the crane under this line, except to move it into the rail site.

It was also possible for Monsanto to have the power shut off and de-energize the high-voltage line. Pearson, the plant engineer, had considered de-energizing the line while the work was going on and discussed the matter with either Monsanto's plant maintenance superintendent or the plant Engineering Department. The decision was made by Monsanto not to de-energize the line because there was a risk in not having two power sources in the event of a power failure. It would have been necessary to coordinate the work with Louisiana Power & Light Company, whose line it was, to de-energize the line. However, the record discloses that it had been done before.

Plaintiffs contend, therefore, that Monsanto failed to exercise reasonable care for the safety of the workers on this job in that it failed to provide a safe place to work and its coordinator could have selected a site for the spotting of the rail cars which would have been a safe place rather than a site directly beneath the high-voltage line; also, that there was lack of due care in Monsanto's failure to de-energize the line by having the power on the high-voltage line shut off, and thus render the area safe in which to work. Plaintiffs cite in support of their contention the Louisiana case of Sherrill v. United States Fidelity & Guaranty Co., La.App., 3 Cir., 132 So.2d 72 (1961), quoting from 65 C.J.S. Negligence § 50, p. 545, as follows:

"However, even though the invitee has knowledge of the danger, or the defect is obvious, the duty of the owner or occupant to use reasonable care to keep the premises reasonably safe for invitees remains, and it runs concurrently with the duty of the invitee to protect himself, so that, where the invitee does not fully appreciate the danger or is without fault, the owner or occupant may be held liable for the jury."

These disputed issues of fact were, of course, for the jury's determination. The scope of our review in cases of this kind has been recapitulated recently by Judge Thornberry on behalf of the Court in Helene Curtis Industries, Inc. v. Pruitt, 5 Cir., 1967, 385 F.2d 841, as follows:

"The test employed by the Fifth Circuit is that a fact issue must be submitted to the jury if reasonable men could differ on the conclusions to be reached from the evidence presented. Isaacs v. American Petrofina, 5th Cir. 1966, 368 F.2d 193; Wells v. Warren 5th Cir. 1964, 328 F.2d 666. We must view the evidence and all reasonable inferences most favorably to the party against whom the motion is made. Moreover, only the evidence and the reasonable inferences which support Appellee's theory may be considered. Wilkerson v. McCarthy, 1949, 336 U.S. 53, 69 S.Ct. 413, 93 L.Ed. 497; Berry v. United States, 1941, 312 U.S. 450, 61 S.Ct. 637, 85 L.Ed. 945. Indeed, after Planters [Planters Manufacturing Co. v. Protection Mutual Insurance Co., 5 Cir., 1967, 380 F.2d 869], our sole function is to ascertain if there is a *rational basis in the record* for the jury's verdict."

In Jones & Laughlin Steel Corporation v. Matherne, 5 Cir., 1965, 348 F.2d 394, this Court said:

"Both the district court and this Court must consider the evidence in its strongest light in favor of the party against whom a motion for directed verdict or for judgment n. o. v. is made, and must give that party the advantage of every fair and reasonable

inference which the evidence justifies."

In Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916 (1946), the Supreme Court said, in a case in which the Court was elaborating upon the standard to be employed in determining whether the evidence in a case raised a question for the jury:

"Only when there is a complete absence of probative facts to support the conclusion reached does a reversible error appear. But where, as here, there is an evidentiary basis for the jury's verdict, the jury is free to discard or disbelieve whatever facts are inconsistent with its conclusion. And the appellate court's function is exhausted when that evidentiary basis becomes apparent, it being immaterial that the court might draw a contrary inference or feel that another conclusion is more reasonable."

See also Planters Manufacturing Co. v. Protection Mutual Insurance Co., 5 Cir., 1967, 380 F.2d 869.

 There are a number of recent Fifth Circuit cases which pertain to the determination of the sufficiency of the evidence to present a question for the jury and which test whether the evidence is sufficient to support the jury's verdict. We have said that if there is no evidentiary basis for the jury's verdict, it cannot be permitted to stand,[6] and that the standard for reviewing a jury verdict is whether the state of the proof is such that reasonable and impartial minds could reach the conclusion the jury expressed in its verdict.[7] The jury is, of course, the traditional finder of the facts,[8] and its verdict must stand unless appellant can show that there is no substantial evidence to support it, considering the evidence in the light most favorable to appellees, and clothing it with all reasonable inferences to be deduced therefrom.[9] It is not the function of the appellate court, however, to weigh conflicting evidence, judge the credibility of witnesses and arrive at a conclusion opposite from the one reached by the jury, where there is a reasonable basis in the record for the jury's verdict.[10] The scope of appellate review of a judgment entered on a jury's verdict is limited but the Court owes a duty not as a mere automaton, but as a judicial function to determine whether there is really a rational basis for a jury's verdict.[11] In the review of a jury verdict the inquiry, therefore, of a reviewing court is whether the jury finding could, with reason, be made upon the evidence before it,[12] and so where a jury has tried a matter upon correct instructions, the only inquiry is whether such conclusion could, with reason, be reached on the evidence.[13] Jury findings on conflicting evidence are binding on this Court, which accepts as true that version of the testimony the jury might reasonably have adopted in reaching its verdict,[14] and unless there was no evidence which, if believed, would authorize the jury's conclusions, they must stand.[15]

 Applying these legal principles, we have no difficulty in affirming the judgment for there is ample evidence that Monsanto failed in its duty of reasonable care to provide a safe place for Falgoust and Reiss to work. Appellants

6. Blount Brothers Corp. v. Reliance Insurance Co., 5 Cir., 1967, 370 F.2d 733, 739.

7. Prudential Insurance Company of America v. Schreffler, 5 Cir., 1967, 376 F.2d 397, 399.

8. Dobson v. Masonite Corporation, 5 Cir., 1966, 359 F.2d 921, 923.

9. Gulf Oil Corporation v. Griffith, 5 Cir., 1964, 330 F.2d 729, 731.

10. Bankers Life & Casualty Company v. Goodall, 5 Cir., 1966, 368 F.2d 918, 921.

11. United States v. Simmons, 5 Cir., 1965, 346 F.2d 213, 218.

12. Spach v. Monarch Insurance Company of Ohio, 5 Cir., 1962, 309 F.2d 949, 950.

13. Patterson v. Belcher, 5 Cir., 1962, 302 F.2d 289, 297.

14. Hanover Fire Insurance Company v. Sides, 5 Cir., 1963, 320 F.2d 437, 442.

15. Dobson v. Masonite Corporation, supra.

state in their original brief (pp. 6, 7) that they "readily admit that if any credible evidence was presented upon which the jury could reasonably find that Monsanto was at fault in causing this accident and that Mr. Falgoust and Mr. Reiss were not guilty of contributory negligence, the verdict must stand." Monsanto recognized its duty by naming its plant engineer as temporary coordinator of the job. But the plant engineer failed to check the clearance on the plant roads and thereby caused the railroad cars to be spotted at a place which was a hazardous and unsafe place to work. True, the plant engineer stated that Welding requested this site for spotting of the cars but it did so under a misapprehension that the work could be done by the operation of a crane working east of the power line and without traversing under the line, whereas in fact this was impossible, since there were low wires which obstructed the way in the transport of the vessels to their final location. Had the rail cars been spotted west of the high-voltage line the work could have been done without accident or danger to the employees involved. A much less hazardous unloading area was, therefore, available and not used. It was also possible for the power line to have been de-energized, which was not done, and it was Monsanto's decision not to do so. The jury had every right under these circumstances to conclude that Monsanto was negligent. Its finding that Falgoust and Reiss were not contributorily negligent also involved disputed questions of fact on contradictory evidence and we will not interfere with its verdict.[16]

■ Monsanto also defends on the ground that the trial judge did not properly instruct the jury on its Louisiana statutory employee defense and in failure of the court to direct a verdict in its favor in this regard.[17] We have carefully reviewed the district judge's instructions and perceive no error therein. The trial court submitted an interrogatory to the jury, "Was the work being performed by Welding & Manufacturing a part of the regular trade, business, or occupation of Monsanto?" and the jury answered, "No."[18] The question presented was whether the work being done by Falgoust and Reiss was work customarily performed by regular employees of the chemical company, and the court so instructed the jury. The business of Monsanto is the manufacture of agricultural chemicals. Monsanto offered proof, however, that the work which it contracted to Welding was a part of the regular trade, business or occupation of Monsanto. Again, an issue of fact was involved and the jury resolved it against Monsanto by its answer to the interrogatory that the new construction work in which Falgoust and Reiss were involved when the accident occurred was not part of the regular trade, business or occupation of the chemical company. We believe the jury was fully justified in reaching the conclu-

16. Cf. James F. O'Neil Co., Inc. v. United States Fidelity & Guaranty Co., 5 Cir., 1967, 381 F.2d 783.

17. La.R.S. 23:1032 (a provision of the Louisiana Workmen's Compensation Act) provides that an injured employee's rights are *exclusively* under the Act.
La.R.S. 23:1061 (another provision of the Louisiana Workmen's Compensation Act) provides in pertinent part:
"Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business, or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; * * *."

18. Had the jury answered "Yes" to this interrogatory, it would have been necessary to dismiss the suits of plaintiffs who were employed by Welding & Manufacturing Company but who would have been thus held to be statutory employees of Monsanto and entitled as such exclusively and only to Louisiana workmen's compensation.

sion shown by its answer to the interrogatory. See Tucker v. Texas Co., 5 Cir., 1953, 203 F.2d 918.

Affirmed.