ALLGOOD, District Judge:
 

 Appellants, Harry Cohn and his wife, Pauline Cohn, appeal the jury verdicts in favor of Columbus Bank and Trust Company (Bank) in the United States District Court for the Middle District of Georgia. The case arose when the Cohns filed a voluntary petition in bankruptcy and sought to have an indebtedness to the Bank discharged in bankruptcy. The Bank filed an adversary proceeding to determine the dis-chargeability of these debts, contending that the debts should not be affected by a discharge because they would be excepted by the language of Section 17(a) of the Bankruptcy Act, 11 U.S.C. § 35(a)(2), in that the debts were liabilities for obtaining money by false pretense or false representations or in reliance upon a materially false financial statement.
 
 [1]
 
 A jury trial was demanded and after the bankruptcy court determined that the debts were provable debts and in the amounts determined by him, the only issue remaining to be tried by a jury was whether the Cohns’ actions with regard to furnishing a financial statement to the Bank and obtaining the loans were those described in Section 17(a)(2) of the Bankruptcy Act. The first trial ended in a mistrial when the jurors were unable to reach a verdict. The jury in the second trial found in favor of the Bank and judgment was entered by the district court against Harry Cohn in the principal sum of $293,330.57 and against Pauline Cohn in the principal sum of $290,137.20. We affirm.
 

 Background information about , the Cohns and their family business dealings is helpful. Harry and Pauline Cohn, from Columbus, Georgia, are the parents of three sons, Robert, Perry, and Larry. Harry had been in the retail clothing business for many years in Columbus. Pauline had obtained a McDonald’s Restaurant franchise in the Atlanta, Georgia area. She had formed three corporations of which she and her sons were shareholders to operate the restaurants.
 
 *1042
 
 Pauline had told her son Robert in 1968 that he could have her stock in the corporations any time he wanted it. Robert and his partner, Gary Mudge, operated the restaurants and paid Pauline a salary of $12,-000.00 a year even though she did no work. The purpose of this arrangement was to obtain the tax advantage to the corporation which issuing dividends labeled as a salary produced because it enabled the corporation to claim a deduction rather than pay taxes on the amount of the dividend. The number of these restaurants eventually increased to ten.
 

 In 1971, the Cohns’ son Larry, and Pauline formed LMC, Inc., to operate Harry’s Haberdashery, a clothing business, in Columbus. Pauline was vice-president and a fifty percent stockholder of LMC, Inc., and Harry occasionally helped out by working as a salesman in the store. Both parents had put a lot of money into this business prior to 1976.
 

 The Cohns also helped their son, Perry, when he had financial difficulty in Macon, Georgia. Shortly before issuing the financial statement on which attention is focused in this lawsuit, they agreed to pledge their three houses and lots located in Columbus to the Georgia Bank and Trust Company of Macon to guarantee Perry’s indebtedness to that bank.
 

 LMC, Inc., had originally done most of its banking with the First National Bank of Columbus, but by March of 1976 a large amount of money was owed to the bank and First National was dragging its feet about deciding to loan LMC any more money. Larry Cohn began to negotiate the possibility of a loan with a Mr. Yancey, an officer of Columbus Bank and Trust. Yancey told Larry that substantial collateral and personal guarantees of Larry and his wife and of Harry and Pauline Cohn would be required. Yancey asked for a financial statement from the Cohns, which Larry delivered to him.
 
 [2]
 

 Harry Cohn assured Yancey that he and his wife would guarantee the indebtedness. The McDonald’s stock in one of the corporations (the PLB Corporation) owned by Pauline and valued on the financial statement at $200,000.00 was pledged to the Bank. A loan in the amount of $247,122.00 was made to LMC on March 11, 1976, renewed on June 11, September 11, renewed as a demand note on December 13,1976, with additional sums being advanced on March 15, 1977, and May 26,1977. Harry and Pauline Cohn filed voluntary bankruptcy proceedings in February, 1978, showing indebtedness of almost $1,000,000.00 and real assets of practically nothing. Larry Cohn also filed a petition for bankruptcy at the same time his parents did. The instant case resulted.
 

 The Bank contended that the financial statement was false and that it and the course of action taken by the Cohns were intended to deceive the Bank in obtaining the loan. The items on the financial statement which the Bank questioned included the McDonald’s stock, the land venture, the silver investment, and certain real estate previously pledged to another bank.
 

 The McDonald’s stock was questioned because two days after the Bank made the loan to LMC, Pauline, as director and shareholder of the PLB Corporation, participated in increasing the number of shares in that corporation to the maximum allowed by the charter and then participated in amending
 
 *1043
 
 the charter so that 200,000 additional shares could be issued. All of the additional shares were issued to Robert Cohn and Gary Mudge for $1.00. The result of issuing the additional shares was that the percentage of PLB shares pledged to the Bank was reduced from 65% to about .05%. In July, 1977, Pauline participated in the sale of the McDonald’s franchise and warranted that none-of the stock was pledged or encumbered. Pauline received $2.62 per share for her sixty shares and Robert and Mudge received over $900,000.00 for this sale.
 

 The Bank considered the listing of the land venture a misrepresentation of assets owned by the Cohns because the investment was in Robert’s name rather than Harry’s name. The testimony at trial was that this was done in order to avoid estate taxes. The Bank also attacked the silver investment listed because it was a speculative investment and the note representing it was in default at the time the financial statement was prepared and, in fact, nothing was ever paid on the note. The Bank also objected to the listing of three houses and lots as assets without also showing that the real estate had previously been pledged to guarantee the Cohns’ son, Perry’s loan at the Macon bank. The houses, valued at $97,500.00, were pledged against a $175,-000.00 loan.
 

 On appeal, the Cohns contend that: (1) the jury verdict was not supported by the evidence; (2) the court erred in not submitting the amount of damages to the jury; (3) the court erred in permitting the jury to consider evidence concerning the sale of ten McDonald Restaurants; (4) the court erred in charging the jury that the financial statement could be considered at the time it was submitted and at the time the money was advanced or at the time the credit was renewed; (5) the court erred in charging the jury that the only way a person can own an interest in real estate is for that interest to be evidenced in writing; and (6) the court erred in failing to include various requested charges in its charge. We find that the evidence was sufficient to support the verdict and that there was no error by the court.
 

 This case was tried before a jury which returned a verdict in favor of the Bank against the Cohns. Barring error by the court, the jury’s verdict must be upheld unless- it can be shown that “there is no substantial evidence to support it, considering the evidence in the light most favorable to appellees, and clothing it with all reasonable inferences to be deduced therefrom.”
 
 Liberty Mutual Ins. Co. v. Falgoust,
 
 386 F.2d 248 at 253 (5th Cir. 1967). Pauline Cohn argues that, as to her, there was no evidence of intent to defraud the Bank since she was not involved in the negotiations to set up the loan and had no communication with the Bank until May, 1977. However, the evidence was such that the jury could rationally infer that Pauline’s course of conduct in watering the McDonald’s stock represented an intent to defraud. This court’s sole function is to ascertain if there is a rational basis in the record for the jury’s verdict.
 
 Helene Curtis
 
 Industries,
 
 Inc. v. Pruitt,
 
 385 F.2d 841 at 850 (5th Cir. 1967),
 
 cert. denied,
 
 391 U.S. 913, 88 S.Ct. 1806, 20 L.Ed.2d 652 (1968). We find such a rational basis upon which reasonable and impartial minds could reach the conclusion expressed by the jury in its verdict.
 

 The trial court was correct in not submitting the amount of damages to the jury. By failing to appeal from the bankruptcy • court’s ruling which set out the amounts, by failing to raise the issue at the trial, by signing the pretrial order which stated there was no issue as to the amount of indebtedness, by failing to object to the charge which set out the amounts owed, and by stating to the jury in the closing argument that the amount was not in issue, the appellants have waived any right to a jury trial as to the amount owed.
 

 There was no error by the court in admitting evidence concerning the sale of the ten McDonald’s Restaurants. This evidence would tend to make the existence of fraudulent representations more probable than it would be without the evidence, thus, it was relevant evidence and, as such, was admissible. Fed.Rules of Evid. Rules 401
 
 *1044
 
 and 402. Likewise, we find no error in the charge that the financial statement could be considered at the time it was submitted and at the time the money was advanced or at the time the credit was renewed since the language of the statute refers to “obtaining an
 
 extension
 
 or
 
 renewal
 
 of credit in reliance upon a materially false statement in writing”. 11 U.S.C. § 35(a)(2) (emphasis added.)
 

 We do not find error in the charge that an interest in real estate must be evidenced in writing. Ga.Code Annotated § 20-401(4) provides that: “Any contract for sale of lands, or any interest in, or concerning them” is an obligation which if it is to be made binding on the promisor, the promise must be in writing.
 
 Id.
 
 The facts developed at trial were that there was land in Hartwell, Georgia which was the subject of a “land venture” and that the paper work was all in Robert Cohn’s name. The facts were insufficient to determine that the charge given was error.
 

 The court has considered the remaining charges of error and find them to be without merit. Consequently, we affirm the judgment of the district court.
 

 AFFIRMED.
 

 [1]
 

 . The exact language of 11 U.S.C. § 35(a)(2) in pertinent part is:
 

 35. Debts not affected by a discharge.— (a) A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as [:]
 

 (2) are liabilities for obtaining money or property by false pretenses or false representations, or for obtaining money or property on credit or obtaining an extension or renewal of credit in reliance upon a materially false statement in writing respecting his financial condition made or published in any manner whatsoever with intent to deceive, or for willful and malicious conversion of the property of another.
 

 Id.
 

 [2]
 

 . The financial statement delivered to the Bank and produced at trial was as follows:
 

 FINANCIAL STATEMENT FEB. 20, iy76 Mr. & Mrs. Harry Cohn ASSETS CASH IN BANK CERTIFICATE NOTES • McDonald's COHN COMMUNITIES (J. Cohn) INVESTMENT (SILVER) 20,000.00 1,000.00 21,000.00 1,800.00 10,000.00 11,800.00 ¿•0,000.00 40,000.00
 

 SECURITIES McDonald's Cottnon Scocks 200,000.00 80,000.00 280,000.00 AUTOMOBILE 8,000.00 REAL ESTATE 2007 Iris Dr. 527 Fulton 706 Palmetto 1/2 interest 1011-13 Broad 1/2 interest 1039 Broad Land Venture 60,000.00 18,500.00 19,000.00 40,000.00 25,000.00 40,000.00 202,500.00 TOTAL ASSETS BANK NOTES 563,300.00 LIABILITIES 78,000.00 NET WORTH 485,300.00