Mary Sue **CARY,**

v.

**ALLEGHENY TECHNOLOGIES INCORPORATED and Allegheny Ludlum Corporation.**

Civil Action 00–282.

United States District Court, W.D. Pennsylvania.

June 12, 2003.

Alisa N. Carr, Dornish & Scolieri, Leech, Tishman, Fuscaldo & Lampl, Pittsburgh, PA, Carol A. Mager, Debora A. O'Neill, Denise K. Kontrak, Mager, White & Goldstein, Philadelphia, PA, Michael D. Homans, Flaster Greenberg, Cherry Hill, NJ, for Plaintiff.

James P. Hollihan, Pepper Hamilton, Pittsburgh, PA, for Defendant.

## MEMORANDUM ORDER

CINDRICH, District Judge.

This case involves two claims of sex discrimination under Title VII. Plaintiff alleged that defendants (collectively "the Company") discriminated by failing to promote her to a position as Vice President—Human Resources. Plaintiff also claimed that she was discharged because of her gender. On March 14, 2003, after two weeks of trial and in its second day of deliberations, the jury informed the court that it was deadlocked. The court delivered a supplemental instruction and later that day the jury returned a split verdict. The jury found for defendants on the "failure to promote" claim, but answered "Yes" to the special interrogatory asking whether the Company discharged plaintiff due to her sex. The jury awarded no compensatory damages but, by agreement of the parties, back pay, front pay and counsel fees were reserved for determination by the court. These issues are being briefed. Pending now is defendants' renewed motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50 or, in the alternative, for a new trial pursuant to Fed. R.Civ.P. 59 (Doc. No. 60).

Defendants raise several arguments. In support of their renewed Rule 50 motion, they contend (1) that there was insufficient evidence that plaintiff's termination was involuntary, (2) that the jury's decision on the "failure to promote" claim undermines plaintiff's prima facie case of discriminatory discharge, and (3) that even if the evidence supported an involuntary termination, it was due to plaintiff's severance demands rather than her gender. In the motion for a new trial under Rule 59, the Company challenges the admission of evidence relating to the selection of Jeffrey McAfoose for the Vice President—Human Resources position in August, 2000. The Company also contends that the court gave

an improper and unduly coercive supplemental instruction, a modified *Allen* charge, *see Allen v. United States,* 164 U.S. 492, 501–502, 17 S.Ct. 154, 41 L.Ed. 528 (1896), after the jury announced that it was deadlocked. Finally, the Company argues, generally, that the verdict was against the weight of the evidence.

We disagree with all of defendants' arguments and will deny the motion. However, we will thoroughly address the issue of our supplemental jury instruction, on which we have less than clear guidance from the Court of Appeals.

### Defendants' Evidentiary Arguments

 The court must view the evidence and all reasonable inferences that may be drawn in the light most favorable to plaintiff. For the reasons stated by the court during trial and those set forth in plaintiff's response brief, we conclude that there was sufficient evidence to establish that her discharge was both involuntary and discriminatory. The jury's conclusion on the "failure to promote" claim did not negate the basis for its decision on the discharge claim. The admission of evidence relating to Jeffrey McAfoose does not justify a new trial for several reasons. First, such evidence was relevant to whether the Company's asserted reason for failing to promote Cary, her lack of experience in labor relations, was pretextual. Second, the Company was given a full opportunity to address and rebut this testimony and, as plaintiff points out, the Company introduced evidence of John Scarfutti's selection as Vice President—Human Resources a year after McAfoose was hired. Third, the McAfoose evidence related primarily to the "failure to promote" claim, on which the Company prevailed, and had little, if any, relationship to the discharge claim. Finally, the verdict was not against the great weight of the evidence so as to justify a new trial. To the contrary, there was evidence to support each side's theory of the case and the jury could reasonably have chosen to believe plaintiff's version of the events.

### Supplemental Instruction

Defendants' challenge to the court's supplemental jury instruction is more weighty and deserving of a detailed response. On the second day of deliberations, the jury sent out a note indicating that it was deadlocked on one of the two claims. Earlier, the jury had sent out questions asking whether Lynn Davis was male or female and whether plaintiff was currently employed. The court then delivered the following instruction, over defendant's objection:

> The Court wishes to suggest a few thoughts to you which you may desire to consider in your deliberations. You should consider these thoughts along with the evidence received during the trial and all the instructions previously given to you.
>
> This is an important case. The trial has been expensive in terms of time, effort, and money to both the defense and the plaintiff. If you should fail to agree on a verdict, the case is left open and undecided. Like all cases, it must be disposed of at some time. There appears no reason to believe that a second trial would not be costly to both sides. Nor does there appear any reason to believe that the case can be tried again, by either side, better or more exhaustively than it has been tried before you.
>
> Any future jury would be selected in the same manner and from the same source as you were chosen. So, there appears no reason to believe that the case could ever be submitted to seven people more conscientious, more impartial, or more competent to decide it or

that more or clearer evidence could be produced on behalf of either side.

These concepts are, of course, clear to all of us who have participated in this trial. The only reason that I mention these facts now is because some of them may have escaped your attention while you have been fully occupied in reviewing the evidence in the case in the light of the instructions with your fellow jurors. These are all matters which, along with other and perhaps more obvious ones, remind us how desirable it is that you unanimously agree upon a verdict.

As stated in the instructions given at the time the case was first submitted to you for decision, you should not surrender your honest beliefs as to the weight or effect of evidence solely because of the opinion of other jurors or for the mere purpose of returning a unanimous verdict.

It is your duty as jurors, however, to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but you should do so only after consideration of the evidence in the case with your fellow jurors. In the course of your deliberations you should not hesitate to reexamine your own views and change your opinion if convinced it is erroneous.

In order to bring seven minds to a unanimous result you must examine the questions submitted to you with candor and frankness and with proper deference to and regard for the opinions of each other. That is to say, in conferring together, each of you should pay due attention and respect to the views of the others and listen to each other's arguments with a disposition to reexamine your own views.

If much the greater number of you are in favor of a claim or a defense, each dissenting juror ought to consider whether a question he or she may have in his or her own mind is a reasonable one since it makes no effective impression upon the minds of so many equally honest, equally conscientious fellow jurors who bear the same responsibility, serve under the same oath, and have heard the same evidence with, we may assume, the same attention and an equal desire to arrive at the truth.

You are not partisans. You are judges judges of the facts. Your sole interest here is to determine whether the party having the burden of proof has proven each essential element of each claim which has been submitted to you. You are the exclusive judges of the credibility of all the witnesses and of the weight and effect of all the evidence.

Remember, at all times, that no juror is expected to yield a conscientious belief he or she may have as to the weight or effect of evidence. But remember also that after full deliberation and consideration of all the evidence in the case, it is your duty to agree upon a verdict if you can do so without violating your individual judgment and your conscience.

You may conduct your deliberations as you choose, but I suggest that you now carefully reexamine and reconsider all the evidence in the case bearing upon the questions before you in the light of the Court's instructions on the law.

You may now retire and continue your deliberations in such manner as shall be determined by your good and conscientious judgment as reasonable men and women.[1]

1. There may have been minor, stylistic variations as this instruction was orally conveyed to the jury. However, the substance of the instruction was consistent with this text,

After receiving this instruction, the jury deliberated for four more hours and then sent out another note informing the court that it remained deadlocked. However, fifteen minutes later, without any additional communication from the court, the jury announced that it had reached a verdict.

■■■ We consider the supplemental charge given by the trial court "in its context and under all the circumstances." *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (per curiam). We start with the general rule that a modified *Allen* charge is permissible. Indeed, the Supreme Court approved the instruction given in that case. The Supreme Court recently endorsed a similar instruction in *Lowenfield v. Phelps,* 484 U.S. 231, 238 & n. 1, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (a death penalty case), noting that all of the Courts of Appeals had approved some form of supplemental jury charge. Although numerous judges and commentators have expressed concerns about the use of the *Allen* charge in criminal cases, the majority of appellate courts have held that it is not error to give it. *See* Wright & Miller, *Federal Practice and Procedure: Criminal 3d* § 502 at 540 n. 28 (3d ed.2000) (collecting cases).

However, the Court of Appeals for the Third Circuit, in *United States v. Fioravanti,* 412 F.2d 407 (3d Cir.1969), prohibited the use of *Allen* charges as "a supplemental or dynamite charge to blast a hung jury into a verdict." *Id.* at 419. This rule has been reiterated recently. *United States v. Eastern Medical Billing, Inc.,* 230 F.3d 600 (3d Cir.2000). Although both of these were criminal cases, nothing in the text of the opinions is so limiting. There are other factors that cause us to consider this issue with care. Federal Rule of Civil Procedure 48 requires that

the verdict be unanimous unless the parties stipulate otherwise. Thus, arguably, defendants in civil cases may claim some type of "right" to a hung jury. In *United States v. Silvern,* 484 F.2d 879, 882 (7th Cir.1973), the Court of Appeals for the Seventh Circuit, without explanation, applied the same standard for *Allen* charges in criminal and civil cases. *Accord United States v. Brown,* 411 F.2d 930, 933 n. 4 (7th Cir.1969) ("We perceive no distinction between criminal and civil cases").

■■■ Despite the doubts raised by these authorities, we follow what we perceive to be the vast majority of courts and conclude that the supplemental jury instruction given in this civil case was proper. In 9A Wright & Miller, *Federal Practice and Procedure: Civil 2d* § 2557 at 449–50 (2d ed.1995), the authors note that the "noisy controversy" about *Allen* charges in criminal cases "has not reached the civil side of the docket." As plaintiff notes, neither defendants nor the court's own research has uncovered even a single civil case in which a modified *Allen* charge has been found to be error. Several of the other courts of appeals have expressly approved such supplemental instructions in civil cases. *See, e.g., John Fabick Tractor Co. v. Lizza & Sons, Inc.,* 298 F.2d 63 (2d Cir.1962); *Orthopedic Equipment Co. v. Eutsler,* 276 F.2d 455, 463 (4th Cir.1960) ("In this circuit, the *Allen* charge has been upheld in two fairly recent criminal cases, [citations omitted]. We believe its recognition in the criminal field points a fortiori to its acceptability in civil cases, and there is ample authority for its use in civil cases") (citations omitted); *Brooks v. Bay State Abrasive Products, Inc.,* 516 F.2d 1003. (5th Cir.1975); *Muldrow v. Daly,* 329 F.2d 886, 888 (D.C.Cir.1964); Eighth Circuit

---

which was taken from the written copy that the court distributed to the parties at the time.

*See* Exhibit 4 to Plaintiff's Response. Neither party ordered the actual trial transcript.

Civil Jury Instructions 4.51 (2001) at 44–46; Ninth Circuit Civil Jury Instructions 3.1 (2001) at 53. For a thorough survey of the various courts' postures on this issue, see *State v. O'Neil*, 261 Conn. 49, 801 A.2d 730 (2002).

The Court of Appeals for the Third Circuit has affirmed similar instructions in a per curiam opinion, *Cherry v. City of Philadelphia*, 293 F.2d 926 (3d Cir.1961) and, albeit without discussion, in *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 940 (3d Cir.1990). Therefore, we believe that the prohibition on *Allen* charges articulated in *Fioravanti* and *Eastern Medical Billing* does not apply to civil cases.

■ With due respect to the Court of Appeals for the Seventh Circuit, we perceive a difference between criminal and civil cases. Both parties to a civil case have an interest in finality and efficiency. By contrast, in a criminal proceeding, the defendant's liberty interests and constitutional rights must take precedence to such considerations as the cost and inconvenience of prosecution. A civil defendant does not face the loss of his liberty and is not entitled to a presumption of innocence. As the Supreme Court eloquently phrased it in *Kotteakos v. United States*, 328 U.S. 750, 773, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (holding that government could not prosecute multiple conspiracies in a single trial):

> But our Government is not one of mere convenience or efficiency. It too has a stake, with every citizen, in his being afforded our historic individual protections, including those surrounding criminal trials. About them we dare not become careless or complacent when that fashion has become rampant over the earth.

The rules of procedure governing civil and criminal actions reflect their fundamentally different priorities. *Compare* Fed. R.Civ.P. 1 (civil rules shall be construed to secure "just, speedy and inexpensive determination of every action") *with* Fed. R.Crim.P. 2 (criminal rules shall be interpreted to provide for "just determination ..., to secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay"). A supplemental instruction designed to secure speedy and inexpensive resolution of a civil case may certainly be justifiable even where the same instruction would be impermissibly coercive in the criminal setting.

Even if the Court of Appeals for the Third Circuit concludes that modified *Allen* charges should not generally be used in civil cases, we believe that under the circumstances of this case, the instruction was appropriate. First, the individual plaintiff here was seeking to redress her Title VII rights against her employer, a large corporate entity, and would have been disproportionately burdened by having to bear the expense of a retrial. Further, this jury was not "coerced." The court is aware that in *Eastern Medical Billing*, 230 F.3d at 614, the Court of Appeals held that the mere fact that the jury deliberated for an additional four hours did not dispel the coercive effect of the supplemental instruction. However, in this case, the jury sent out another note after the instruction, stating that it remained deadlocked. Thus, we have clear evidence that the supplemental instruction did not "dynamite" the jury into a verdict. Finally, we look at the text of the instruction itself. On one hand, it contained some forceful elements designed to encourage the jury to reach a verdict. On the other hand, though, the jurors were reminded not to surrender their honest beliefs, individual judgments or consciences. *See United States v. Brennan*, 326 F.3d 176,

192–93 (3d Cir.2003) (suggesting that "a charge would not be coercive if it contained language urging the jurors to re-examine their own view but not to surrender [their] honest conviction") (citations omitted). In summary, we conclude that the supplemental jury instruction was appropriate.

In accordance with the foregoing, Defendants' post-trial motion for judgment as a matter of law or, in the alternative, for a new trial (Doc. No. 60) is DENIED.